## Jewell *versus* The Commonwealth.

1. The Act of 1814 providing, *inter alia*, that pleading the general issue, or a trial in any Court, civil or criminal, shall be a waiver of all errors and defects in the *precept, venire*, drawing, summoning, and returning of jurors: it was *Held*, that after conviction of murder in the first-degree, it was too late to object to mistakes in the process as to the Christian and surname of some of the jurors by whom the verdict was rendered.

2. In indictments for murder the Commonwealth's counsel may challenge for cause.

3. In an indictment for felony, an objectionable juror may, at the request of the district attorney, be directed to stand aside, and such person shall not be again called till the residue of the panel be exhausted; when the prosecuting officer may challenge the said juror for cause.

4. In such a case, a juror may be excused from being sworn on account of indisposition. Such action of the Court is within its discretion, and not the subject of revision.

5. If it do *not* appear from the record that persons not on the *venire* were called as jurors after the panel was exhausted, and upon an order of the Court for talesmen, it will be an irregularity. But such irregularity is, by the Act of 1814, cured by a trial on the merits.

6. The names of the witnesses in such a case need not appear in the body of the record. But if it were necessary, their names, in this case, appear upon the margin of the minutes of the Court, and are there marked as sworn. The minutes are a part of the record.

7. Everything in the office of the clerk, relating to the case, whether entered on the docket, or the minutes, or on separate papers, is part of the record.

8. The presence in Court of a prisoner charged with a capital offence, at any time between the verdict and sentence, though very proper, is not necessary to the validity of the judgment.

9. But his absence when a new trial was asked and reasons filed, and a time fixed for their argument, would at most vitiate *the sentence;* and he might be sentenced anew by this Court, or, if the sentence were reversed, the record might be remitted to the Court below, with directions to proceed in the case according to law.

ERROR to the Court of Oyer and Terminer of *Allegheny county.*

At October Term, 1852, of the Court of Oyer and Terminer for the county of Allegheny, David Jewell was indicted and convicted of murder in the first degree, the verdict being rendered on 8th December. The record showed that the prisoner was then *present in Court.* The docket entries showed to the following effect:

On the 11th December a motion for a new trial was entered, and the Court ordered that the time for filing the reasons be enlarged until the 16th instant. On December 16, on motion of his counsel, the time for filing reasons was extended. On 18th December reasons were filed. On 20th December it was ordered by the Court that the motion for a new trial be taken up for argument on Wednesday, the 22d December. On 23d December, 1852, it was stated on the docket, *prisoner present in open Court,*

[Jewell *v.* The Commonwealth.]

motion for a new trial argued. And, December 24, 1852, *prisoner present in open Court,* motion for a new trial overruled by the Court. Same day, motion in arrest of judgment. Reasons filed, argued, and overruled by the Court. Same day, the prisoner, *being still present in open Court,* was sentenced. It did not appear from the record that the prisoner was in Court on the 11th December, when the motion for a new trial was made; nor from that time till the 23d December; nor that any action occurred in Court in this matter on the 22d December.

An application for an *allocatur* was made for the following reasons, viz. :

1. The *record* does not show that any witnesses were sworn and examined during the trial, on the part of the Commonwealth, or on part of the prisoner.

2. The record does not show that the prisoner was present in Court during the *whole* of the trial.

3. Because the record shows that two persons, to wit, Thomas A. Rowley and James Murdock were empannelled and sworn as traverse jurors, when the record of the rolls and *venire* for October Term, 1852, show that no such persons were on the rolls of that term.

An *allocatur* was granted, and various assignments of error were made to the effect as follows:

That the name of Wilson Woodburn appears in the panel annexed to the *venire,* but that name does not appear in the list set up in the office of the sheriff and of the clerk of the Court, as required by Act of Assembly. 2. That although the name of Wilson Woodburn appears on the panel returned with the *venire,* yet that in the jury list made out by the clerk of Oyer and Terminer, no entry is made of the name of Wilson Woodburn, but in the stead thereof, the name of Wilson Woodford was originally entered on the jury roll. And that, afterwards, the name of Wilson Woodford was changed *by the clerk,* to that of William Woodford, and that on the trial of the said cause, the name of William Woodford was called as a juror, to be empannelled in said cause, and that the said Wilson Woodford, then being present, did not answer to the name of William Woodford, whereby the said defendant was deprived of the right which he would otherwise have had, of having the said Wilson Woodford on the panel for the trial of his cause. 3. That on the list put up in the offices aforesaid, the names of said Bredin Warren appears as one of the panel, which name likewise appears, by the *venire,* to have been the name inserted in the panel of jurors, which by the said writ the sheriff was directed to summon. And, it further appears, that an alteration of the said name has been made in the *venire, by prefixing the name Clement,* before the name Bredin. So that the name reads

[Jewell *v.* The Commonwealth.]

Clement Bredin Warren, by which name the said Warren appears on the list of jurors in the said Court, and by which name he was called and sworn.   4. That the attorney for the Commonwealth having challenged said William Wilson, Stephen Hague, Stephen F. Mercer, William McCune and William Tilbrook, the same were set aside by the Court without the assent of the said David Jewell, whereby he was deprived of the benefit of having the said William Wilson, Stephen Hague, Stephen F. Mercer, William McCune, and William Tilbrook empannelled as jurors for his trial.   5. That William Tilbrook, who, upon the showing of the prosecuting attorney, and without the assent of the said David Jewell, was stood aside by the Court, was afterwards challenged for cause by the prosecuting attorney, and not permitted to be empannelled on said jury, was not sworn upon his *voir dire* and examined thereupon as to the cause of challenge, nor is there any cause alleged why the said William Tilbrook should not have been forthwith empannelled on said jury.   6. That said John Crawford, one of the jurors called, was excused by the Court from serving on the jury aforesaid, without the consent of the said David Jewell. 7. That the panel of jurors returned on the *venire*, and present in Court, was *not exhausted* at the time said Thomas A. Rowley and James Murdock, the two jurors who, with the other jurors, were empannelled to try the cause, were sworn upon the jury. 8. That there is no order of Court, as by law it is required, to summon and return from the bystanders, or from the county at large, so many competent and qualified persons as were necessary to fill up the jury for the trial of the cause in which the said David Jewell was impleaded.   9. That it does not appear that the witnesses alleged to have been examined, were sworn in due form of law.   10. That the said Thomas A. Rowley and James Murdock, two of the jurors who were empannelled for the trial of the said David Jewell, were not of the jurors summoned and returned on the *venire* issued by virtue of the precept of the judge, and returned as summoned on the same, and that no authority appears for summoning and returning the said Thomas A. Rowley and James Murdock.   11. That the said David Jewell does not appear to have been present during the time occupied by the said Court in trying the said cause.

Signed             DAVID JEWELL.

By the Act of 21st February, 1814, it is enacted : Sect. 1. No verdict hereafter given in any Court, civil or criminal, in this Commonwealth shall be set aside, nor shall any judgment in any Court be arrested or reversed, nor sentence stayed for any defect or error in the precept issued for any Court, or in the *venire* issued for summoning and returning of jurors, or for any defect or error in drawing, summoning, or returning any juror or panel

of jurors; but a trial or an agreement to try on the merits, or pleading guilty or the general issue in any case, shall be a waiver of all errors and defects in or relative and appertaining to the said precept, *venire*, drawing, summoning, and returning of jurors.

Sect. 123d of Act of 14th April, 1834, provides, that the commissioners, &c., shall make out in alphabetical order two lists of the names of the persons so drawn, to serve as grand, petit, or special jurors, and one of the said lists they shall deliver to the sheriff of the respective county, and the other to the prothonotary or clerk of the proper Court, to be set up by them in their respective offices for the inspection of all persons concerned.

On the minutes of the trial of this case it was noted—

Challenged for cause by the Commonwealth: '

William Wilson, Stephen Hague, Stephen F. Mercer, William McCune, and William Tilbrook.

Stood aside by the Court for the present, and afterwards challenged for cause by the Commonwealth:

William Tilbrook.

Excused by the Court:

James Crawford.

Talesmen called:

Thomas A. Rowley and James Murdock.

The jurors empannelled in the case were *Clement·Breden Warren*, &c., &c., *Thomas A. Rowley*, and *James Murdock*.

On the list of jurors drawn and summoned, were the names of William Tilbrook, Wilson Woodford, Breden Warren.

On the *minutes*, the names of a number of witnesses were stated on part of the Commonwealth and also in defence, and, it was added, sworn.

October 27, 1853. *Darragh*, for the prisoner.—It was said to be important that the forms of trial in criminal cases be observed: Dunn v. Commonwealth, 6 *Barr* 385; and that *the record* should show that they have been adhered to: 3 *Ser. & R.* 237; 5 *Id.* 315. The Act of 1718, 1 *Smith's Laws*, 105, provides that witnesses shall be sworn or affirmed, and the form of the oath is prescribed. This Act is in force: Dunn's Case cited. In an indictment, nothing material is to be taken by intendment or implication: 5 *Barr* 66; 6 *Id.* 386. It was contended that the docket entries only are the proper record; that the minutes of the clerk, though evidence of the ministerial acts of the Court, are not evidence of its *judicial acts*: 3 *Pick.* 282; 1 *Starkie Ev.* 256–7. The record should show that witnesses were called and sworn. It was said to be necessary, according to the decision in Dunn's Case, that

[Jewell *v.* The Commonwealth.]

the record should show that the prisoner *was present in Court* during the whole of the trial: 4 *Black. Com.*　　; 1 *Chitty Crim. Law* 363 ; 3 *Saund.* 393 ; 6 *Harris* 104, Prine's Case. Neither the minutes nor the record show his presence from the 8th till the 23d December. The 22d December was fixed for the argument, but neither the minutes or docket show that the Court met on that day. The prisoner should be present when a motion for a new trial is argued: 2 *Burr.* 931 ; 1 *Chitty Crim. Law* 659 ; 2 *Strange* 826, King *v.* Johnson ; 1 *Chitty Crim. Law*, 659.

As to the third reason assigned in the application for an *allocatur*, that two persons, viz. Rowley and Murdock, were sworn as jurors whose names were not on the *venire :* The *docket* does not show that the panel was exhausted, and that a tales was awarded. Reference to 144th sec. of Act of 14th April, 1834, as to tales being awarded *upon the order of the Court,* when there shall not be a sufficient number of competent jurors present. As to the practice in awarding tales, reference was made to 2 *Saunders* 16–17 ; 3 *Black. Com.* 365 ; 4 *Wash. C. C. R.* 412. The Act of 1814 does not provide for *the want of* a precept, but only against *defects :* 3 *Ser. & R.* 303–4. Reference made to the omission of *Middlesex,* in Wilkes' Case, 4 *Burr. Rep.*

*Flanegan,* on part of the Commonwealth.—The names of the witnesses in this case are entered on the *minutes.* From an examination through a period of above thirty years, it does not appear to have been the custom in Allegheny county to enter the names of witnesses on the *docket,* but only on the *minutes.* It was contended that the minutes were a part of the record, and from it the docket entries are made up. The latter, sometimes, is not made up for weeks or till after the end of the term.

2. It was not necessary that the prisoner should be present in Court from the 11th to the 23d December.

As to the third reason assigned in regard to the *talesmen,* it was said that the *minutes* showed that talesmen were called.

As to the 2d and 3d assignments of error, it was observed that no objection was made at the time by the prisoner's counsel. The jurors named in the 4th assignment were excused for having expressed or made up an opinion as to the case. Tilbrook was challenged for cause. Crawford was excused perhaps from sickness ; no objection was made at the time. That the 7th was incorrect. As to the 8th, it is not usual to note the order of the Court as to the talesmen. As to the 9th, the names of the witnesses appear *on the minutes.* 10th, that Rowley and Murdock were summoned as talesmen. 11th, replied to before.

*Shaler,* for the prisoner.—As to the propriety of adhering to

form in criminal proceedings, reference was made to the opinion of GIBSON, C. J., in Hartmann *v.* Commonwealth, 5 *Barr* 60. He remarked on the alteration in the names of jurors who had been summoned, viz. in the names of Woodford and Warren, as having been made without the consent of the prisoner's counsel. The clerk certifies that the name of the first was changed from Wilson to William; and to the other Clement was prefixed. Breden Warren was *summoned*, and the name of Clement Breden Warren *put on the list.* Case of Commonwealth *v.* Spring, Phila. case, cited. It was admitted that jurors may be set aside on motion of the Commonwealth's counsel till *the panel was exhausted;* but that they must then be called and passed on. He contended that William Wilson and the four others were stood aside, but that only Tilbrook was acted on and challenged for cause. That for this reason the panel was not *exhausted* before talesmen were called.

It was contended that the minutes are not part of the record, and that the awarding of a tales should appear by the record: 3 *Coke's Rep.* 45.

It was contended that the prisoner should have been present during the argument of the motion; the argument of the motion for a new trial was a part of the trial. It should appear by the record that a *venire* issued; that the panel was exhausted, that a tales was awarded, and that the prisoner was present in Court *during the whole proceeding.*

The opinion of the Court was delivered, October 29, 1853, by

BLACK, C. J.—The prisoner was found guilty of murder of the first degree, and sentenced to death in the Court of Oyer and Terminer for Allegheny county. A writ of error was allowed, and the governor suspended the execution of the sentence until the exceptions taken to the judgment could be examined in this Court.

It is unnecessary to say that we have no authority to look beyond the record. An error not apparent on the face of the recorded proceedings, however gross and improper it may have been, is not a subject of review here, and the prisoner has no more right to expect relief on account of such irregularities from us, than from any other five citizens of the state, who are invested with no judicial authority at all. His counsel, knowing our duty and their own, have confined their *written* specifications to those things which they allege to be errors on the record. We have considered them carefully, and will give our opinion briefly on every point which they embrace, and we wash our hands of everything else that may be in the case.

The specifications are eleven in number, but some of them may be considered together, as requiring but a single answer.

1, 2, 3. A series of mistakes appear to have been made in the

name of a juror who is called *Wilson Woodburn* in one part of the process, *Wilson Woodford* in another, and *William Woodford* in another. The name of Clement Bredin Warren (the true name of another juror) was at first written "*Bredin Warren*," omitting the first name, but "*Clement*" was afterwards prefixed, and by this, his full name, he was called and sworn. These facts constitute the substance of the three first specifications of error. If such objections were sufficient to set aside a judgment, the administration of criminal justice would be wholly impracticable. Very few cases would stand. It is almost impossible to avoid mistakes like these. The occurrence of them does not diminish the safety of an innocent man, and whatever may be the humanity of the law, the escape of the guilty is not one of its objects. It would be a great public misfortune if a person charged with an offence could sit by while he is tried by a jury to whom he makes no objection, and after a verdict against him on the merits of his cause, set it aside on account of accidental and unavoidable irregularities in the summoning or calling of the jurors, by which he was not prejudiced. But the legislature has not left the public interests in a condition so forlorn. By the act of 1814 it is provided that no verdict in any case, civil or criminal, shall be set aside or reversed for any defect or error in drawing, summoning, or returning any juror or panel of jurors, but all such defects or errors shall be cured by a verdict on the merits. If the law which regulates the selection of jurors be violated, the party in danger of being injured by it may challenge the array for that cause and refuse to be tried except by a legal jury; but he waives the irregularity if he goes to trial without objection.

4. The fourth specification asserts that the attorney for the Commonwealth challenged five jurors, and that they were set aside by the Court without the consent of the prisoner. By the record it appears that these jurors were challenged for cause. It is not denied that the right of the Commonwealth to challenge a juror for cause, is as clear as that of the party accused. This exception must have been taken under some misapprehension of the facts.

5. One of the jurors referred to in the specification last considered, was first stood aside on the request of the district attorney, and when called again was challenged for cause. This is in accordance with well settled rules. The Commonwealth in cases of felony has no right of peremptory challenge, but her representative, when an objectionable juror is called, may request that he be ordered to stand aside, and such juror shall not be again called until the panel be exhausted. Then the prosecuting officer may challenge him for cause, with as much effect as he could have done at first. This is what was done in the present case, and there was nothing irregular in it.

6. Another juror was *excused* without the consent of the prisoner. When a juror is disabled by sickness or other cause from sitting, the Court ought not to require him to be sworn. The Court must be permitted to judge what is a sufficient reason for excusing a juror. It is within their discretion, and not the subject of revision.

7, 8, 10. Two jurors were called and sworn whose names were not on the venire. The record shows that they were called as talesmen *de circumstantibus*. But it does not show that the panel was entirely exhausted, or that a formal order for the summoning of talesmen was made by the Court. We presume nothing against a prisoner in the condition of the unfortunate man now before us, except what the record proves affirmatively. Because therefore it does not appear that the two jurors referred to were called after the exhaustion of the regular panel, and upon an order of the Court for talesmen, we are bound to say that an irregularity was committed. But agreeably to the act of 1814, already cited, it was cured by a trial on the merits. It was "an error or defect in the summoning" of two jurors, and is within the letter as well as the spirit of the statute. It was the prisoner's duty to make this objection when the jurors were called, and not having done so then, it is for ever too late.

9. The record does not in the body of it state the names of the witnesses who were sworn for and against the prisoner. But on the margin of the minutes the names are noted, with the addition of the word "*sworn*," to each name. We are of opinion that the specification of error founded on this fact cannot be sustained, for two reasons, either of which would be sufficient without the other. In the first place, it is not necessary that the names of the witnesses should appear on the record, any more than it is that the evidence should be set forth. And, secondly, if it were necessary, their names are here. It is sufficiently apparent that they were sworn according to law; for when a witness is said to be sworn, it must be intended that he was legally qualified to give testimony.

11. The last specification is that the prisoner does not appear to have been present during the whole trial. The record shows that he was present during every stage of the proceeding, down to the time when the verdict was rendered; that he was also there when the motion for a new trial was argued, and when judgment of death was pronounced upon him. But he was not there when the motion for a new trial was made, nor when the time was extended for filing reasons, nor when the reasons were filed, and a day fixed for hearing the argument upon them. We are of opinion that the presence of a prisoner charged with a capital offence, at any time between the verdict and sentence, though very proper, is not necessary to the validity of the judgment. His

counsel may ask for a new trial in his absence. But if we thought this exception sustainable, the prisoner would not be helped by it. It relates to a part of the case which comes after the verdict, and at worst it could not do more than vitiate the sentence. Looking at it in that light, it would be our duty to sentence him anew, or perhaps to reverse the sentence and remit the record with directions to proceed according to law, beginning at the point where the error was committed. But the granting or refusing of a new trial is purely discretionary, and nothing connected with the manner of its refusal can be the subject of error here.

The loose manner in which records are kept in Pennsylvania, makes it necessary that we should consider everything found in the office of the clerk and relating to the case, a part of it, whether it be entered on the docket or on the minutes, or in separate papers. We have no other record than what can be made up in this way by combining everything together. We cannot reject an entry on the minutes, any more than a docket entry. We have therefore considered the minutes as part of the record.

We have examined all these exceptions carefully. We have not for a moment forgotten that the life of a human being hangs upon our decision. But we are all of one mind, that the prisoner's case is beyond our reach. We can give him no relief without violating those laws which we are here to guard and defend. If we could set aside the judgment for such reasons as he has presented, we would render justice impossible in many cases, and expose society unprotected to the danger of the worst crimes.

Judgment affirmed.