## Commonwealth *v.* Potts, Appellant.

*Criminal law—Murder—New trial—Jury—Mistake as to juror —Knowledge of mistake.*

Judgment of death entered upon a verdict of guilty of murder in the first degree should not be reversed where the sole error alleged is the court's action in refusing to grant a new trial, upon the discovery some time after the verdict had been rendered that when a certain juror's name was called, another man with a different first name responded and was sworn, where it clearly appeared that the latter did not intentionally impersonate another, but allowed himself to be accepted as a juror under the honest belief that he was the juror intended to be called, that he was in fact the man whose name the jury commissioner intended to put in the wheel; that he was accurately described as to residence, occupation, middle letter and last name, the only misdescription, resulting from a clerical error, being as to his first name; that there was no resident of the town known by the name as first called; and that the answers of the witness when examined on his voir dire were sufficient to put counsel for the prisoner on notice of these facts.

Argued May 12, 1913. Appeal, No. 146, Jan. T., 1913, by defendant, from judgment of O. & T. Chester Co., on verdict of guilty of murder of the first degree, in case of Commonwealth v. Wilmer T. Potts. Before FELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Indictment for murder. Before BUTLER, J.

The opinion of the Supreme Court states the case.

Verdict of guilty of murder of the first degree on which judgment of sentence was passed.

*Error assigned* was in refusing to grant a new trial.

*W. Butler Windle,* with him *J. Paul MacElree,* for appellant.

*Harris L. Sproat,* District Attorney, with him *Truman D. Wade,* Assistant District Attorney, and *William Tregay,* for appellee.

OPINION BY MR. JUSTICE BROWN, May 28, 1913:

Though this appeal is from judgment of death, it is not alleged that any error was committed on the trial of the case, nor is there any complaint that the verdict returned against the appellant was not justified by the evidence. The sole assignment is that the court erred in not granting a new trial upon the discovery, some time after the verdict had been rendered, that, when the name of James T. McCullough was called as a juror, one John T. McCullough responded, and, after having been sworn, took a seat in the jury box.

It is very clear from the depositions taken in connection with the motion for a new trial that John T. McCullough did not intentionally impersonate another, but allowed himself to be accepted as a juror under the honest belief that he was the juror intended to be called. When the jury wheel was being filled for the year 1913, one of the jury commissioners gave to their clerk the name of John T. McCullough, with his occupation as a watchman and his residence West Chester. The clerk inadvertently wrote the name of James T. McCullough, adding, however, the occupation and residence given to him by the commissioner, and the slip, so written, was placed in the wheel. At that time John T. McCullough was a watchman and had for years been a resident of West Chester. There had not been, so far as can be gathered from the depositions, any resident in the town known by the name of James T. McCullough. The slip as placed in the jury wheel was drawn out when the jurors were selected for the term of court at which the prisoner was tried, and it so appeared on the venire. After ineffectual efforts to serve notice upon James T. McCullough to serve as a juror, a notice was sent to John T. McCullough, who returned it to the

sheriff, believing that a mistake had been made. When this was brought to the notice of Michael Cook, the jury commissioner who had directed the name of John T. McCullough to be placed in the wheel, he explained to the sheriff that John T. McCullough was the correct name of the juror to be summoned, and thereupon a new notice was made out and served upon him. It was in response to this that he appeared in court. After the jurors had been drawn for the term of court at which the appellant was tried, one of his counsel made some investigation as to James T. McCullough, but found no one of that name living in West Chester. He did, however, learn that a James H. McCullough, a lineman, had been a resident of the town and had lived at 131 East Union street, but had moved to Philadelphia some time before the wheel was filled. The excuse given for having permitted John T. McCullough to be sworn as a juror is that it was assumed he was the McCullough about whom counsel for the prisoner had made inquiries. The court below properly held that this was unavailing. John T. McCullough, the juror who sat in the box, was the man whose name the jury commissioner intended to put in the wheel. He was accurately described as to residence, occupation, middle letter and last name, the only misdescription being as to his first name; and, when he was examined on his voir dire, his frank answers were sufficient to put counsel for the prisoner upon notice that they ought to make further inquiry as to his identity. Not having done so, it is now too late to complain of his eligibility to serve as a juror. When the jury wheel was being filled, he was a watchman, but, when examined on his voir dire, he testified that he lived in West Chester, was a laborer, taking employment wherever he could find it, and that his residence was 113 East Minor street—not 131 East Union street, where James H. McCullough, the lineman, had formerly lived. Here was knowledge brought directly to counsel for the prisoner that the juror was not the man about whom

they had inquired after the jury list had been posted in the proper office, and, with such knowledge, he was accepted by them and sworn. The verdict rendered by him and the eleven other jurors was a true one, not only in law, but in fact. If the objection now made to the juror were sufficient to set aside a righteous judgment, "the administration of criminal justice would be wholly impracticable. Very few cases would stand. It is almost impossible to avoid mistakes like this. The occurrence of them does not diminish the safety of an innocent man, and whatever may be the humanity of the law, the escape of the guilty is not one of its objects. It would be a great public misfortune if a person charged with an offense could sit by while he is tried by a jury to whom he makes no objection, and after a verdict against him on the merits of his cause, set it aside on account of accidental and unavoidable irregularities in the summoning or calling of jurors, by which he was not prejudiced": BLACK, C. J., in Jewell v. Commonwealth, 22 Pa. 94.

The assignment of error is overruled, the judgment is affirmed and the record remitted for the purpose of execution.