## Hughes v. Liss

*Harry Shapiro*, for plaintiff; *Maurice W. Sloan*, for defendant.

GLASS, J., December 28, 1934.—This is an action in trespass for personal injuries and property damage as a result of a collision between the motor vehicles of the plaintiff and the defendant. The case was tried before Tumolillo, J., with a jury on October 16, 1934, and a verdict was rendered in favor of the defendant. The plaintiff filed a motion for a new trial, which is now before us.

John Hughes, the above-entitled plaintiff, was operating a Ford sedan in a southwesterly direction on the Roosevelt Boulevard, approaching Wyoming Avenue, both public highways in the City of Philadelphia, on Sunday, October 4, 1931, at about 4 o'clock in the morning. The defendant operated a truck in an easterly direction on Wyoming Avenue. The two motor vehicles came into collision at or near the intersection, as a result whereof the plaintiff sustained personal injuries and suffered damages to his automobile.

The plaintiff testified as follows: "I was proceeding southwest on the Roosevelt Boulevard. As I came to the Sixth Street bridge I saw a pair of headlights to my extreme right coming out of Wyoming Avenue. He turned as

though he was going to pass in my rear to go up the boulevard. When he came within twenty-five or thirty feet of me he suddenly swerved right over in front of me. I threw my wheel hard and tried to clear him and I stopped. He continued right on and smacked into the front end of my car and turned it from southwest heading south."

He further testified that the operator of the defendant's truck did not give any signal or warning of his intention to make the turn, and that he was proceeding at the rate of about 30 miles an hour. On cross-examination, the plaintiff testified that when he first saw the defendant's truck it was north of the boulevard, coming out of Wyoming Avenue and heading east; that when he observed the lights on the truck, he was 50 to 75 feet away, and that he himself was proceeding at the rate of 30 to 35 miles an hour.

The plaintiff, in support of his motion for a new trial, assigns as error, inter alia, errors in the charge of the trial judge to the jury and the refusal to charge as requested by the plaintiff; and also that the jury which was empaneled in the issue that was tried was not a lawfully drawn and authorized jury.

We will consider first the assignment of error which relates to the tales jurors. In support of the motion for new trial, Harry Shapiro, a member of the Philadelphia Bar, who did not appear as counsel on the trial of this cause, filed an affidavit wherein it is averred, inter alia, upon information and belief, that twenty-two persons who were summoned to act as jurors in the Municipal Court of Philadelphia in Room 234 before Hon. Joseph G. Tumolillo, there presiding, were personally, solely, and exclusively chosen and selected by the said judge, and that none of the said twenty-two persons was drawn or empaneled or notified and summoned to act as jurors in the manner provided by law.

Although we find nothing upon the face of the recorded proceedings to indicate any error with respect to the jury—there being neither a motion to quash the tales, nor any ruling and exception thereon—and although, strictly speaking, we may not have authority to look beyond the record, and error, if any, is not the subject of review: Jewell v. Commonwealth, 22 Pa. 94, 99; and although no depositions were taken or filed by the plaintiff in support of the affidavit, we will nevertheless, because of the importance and seriousness of the matter involved, to wit, the protection of the jury system, and in the interests of the proper administration of justice, consider it and go beyond the recorded proceedings.

We find upon inquiry and take judicial notice of the fact that there was a panel of 60 jurors drawn for service in the Civil Division of the Municipal Court of Philadelphia, in Room 234, for the first period commencing October 8, 1934, and that the sheriff of this county made returns of n. e. i. (non est inventus) as to 11, and m. e. (mortuus est) as to 2. Of the remaining 47, there were 20 excused, presumably for cause (the court must be permitted to judge what is sufficient reason for excusing a juror: Jewell v. Commonwealth, supra), thus reducing the number of jurors for that courtroom to 27. The trial judge, considering the number of jurors remaining insufficient for the proper trial and despatch of the court's business, directed the Clerk of the Municipal Court, Joseph P. Bartilucci, Esq., to procure 20 talesmen.

On the day of the trial of the instant case, 20 of the additional talesmen were present in court. A list with their names, addresses, and occupations mimeographed on a white sheet of paper headed "Civil Division (Room 234 City Hall), Municipal Court of Philadelphia. Additional talesmen for first period. October term, 1934", and pasted to the bottom of the printed pink-colored list headed

"Civil Division (Room 234), Municipal Court of Philadelphia. List of special jurors for October term, 1934. First period. Commencing October 8, 1934", was offered for distribution and for use by members of the bar and litigants. Counsel, however, as before indicated, made no objection to the talesmen, and the case proceeded to trial. Seven of the talesmen were empaneled in the jury which tried the issue.

Counsel for the defendant, in the brief filed by him against the motion for a new trial, contends that objection to the talesmen assigned for jury duty should have been made at the time of the trial and a ruling thereon had and exceptions noted, in the absence of which no complaint can now be made because it is too late. In support of his position, he directs our attention to the cases of Eakman v. Sheaffer, 48 Pa. 176, Quinn v. Woodhouse, 26 Pa. 333, and Burton v. Ehrlich, 15 Pa. 236.

In the case of Eakman v. Sheaffer, supra, Thompson, J., said (p. 178) :

"If the counsel had objected to the juror the moment he discovered that he had sat on a former trial of the same cause, and the court had overruled his objection, he might possibly have had a case; but he took his chance of a verdict before making the objection, and then it was too late. But this is of no consequence now, as the case must be reversed on other grounds."

In Quinn v. Woodhouse, supra, it is said in the syllabus:

"An irregularity in selecting and swearing the jury, unless put upon the record by an exception, cannot be reviewed in this court."

In Burton v. Ehrlich, supra, in a per curiam opinion, it is said:

"This case is not within the letter of the act of 1814, but it is within its spirit. The plaintiff in error might have had the juror's name struck from the panel upon motion; but he chose to let it remain and take his chance of the verdict, and that was a waiver of objection."

We feel, however, that strictness of procedure and practice need not be followed nor adhered to where the proper administration of justice is involved, and particularly the question of trial by jury.

We have before us, however, not the matter of a slight irregularity in the proceedings as it affects the jury, but a material departure from the procedure prescribed by law. The manner in which the jury panel shall be drawn is regulated in this Commonwealth by statutory provisions. The provisions of those statutes, intended and designed to secure a fair and impartial jury, are mandatory and must be substantially complied with. We cannot excuse compliance because of inconvenience or even a delay in the trial of a cause.

The Act of April 20, 1858, P. L. 354, provides for the selection of jurors in the City and County of Philadelphia. By the terms of that act, responsibility for summoning the jurors thus drawn is placed exclusively in the sheriff of the county. The legislative branch of our government has endeavored to safeguard our jury system and has also made provision in the event of the happening of certain emergencies, as, for instance, a deficiency in the number of jurors for the trial of cases, by providing for the selection of talesmen—talesmen or tales jurors being defined as jurors added to a deficient panel so as to supply the deficiency.

Section 7 of the Act of April 20, 1858, P. L. 354, makes provision for the manner of drawing talesmen by requiring "the said sheriff shall produce the said wheel in open court, and in the presence of the judges thereof draw therefrom five names for every talesmen required; which names so drawn shall be immediately noted on the minutes of the court, whereupon a venire shall be issued, requiring the said sheriff to bring into court any one of the said five per-

sons so drawn, to serve as a tales juror; no tales juror shall be selected or served in any other manner; the tickets or slips so drawn from the said wheel shall be returned thereto."

The talesmen or tales jurors were not drawn and summoned in accordance with the statutory provision just referred to.

The writer of this opinion has been informed by the clerk of this court, whose ministerial duty involved procuring jurors and talesmen in accordance with statutory provisions, that he proceeded under a mistaken belief that the Act of April 16, 1925, P. L. 244, and particularly section 8 thereof, headed "Summoning of Talesmen" and reading as follows: "When because of exhaustion of the regular panel of jurors or other causes talesmen are immediately required for service as jurors in a case called for trial, the trial judge shall appoint one or two or three persons or public officials as the court may determine, having no personal or pecuniary or official interest in the case on trial to summon such ... [number] of talesmen as the court shall direct for jury service in the case on trial. . . . The court may direct the persons so appointed to summon talesmen to work as a unit and to jointly summon the talesmen ordered for service or said persons so appointed may be sent out separately to summon a given number of talesmen. The notice to the talesmen shall be in writing directing the talesmen to appear at the court house at a certain hour and day for jury service, and this notice shall be signed by either the clerk of the jury board or any member of the jury board or any one of the officials or citizens appointed by the court to summon talesmen", was general in its application, and resorted to the procedure above mentioned in the instant case. The said act, however, applies only to counties of the third class and has no application to counties of the first class. The clerk erroneously proceeded under the wrong statute, and, we believe, innocently.

We next pass to the complaint that the talesmen were "personally, solely, and exclusively chosen and selected by" the trial judge. Upon inquiry of the clerk, to whom reference has already been made, the writer of this opinion has been informed that no names of persons or lists of names of the persons to be called as talesmen were furnished to him by the trial judge. We therefore dismiss this complaint without further comment.

Our conclusion is that the persons designated as talesmen were improperly drawn and empaneled as jurors, and that the notices and summons to act as jurors were not served upon them in the manner provided by law. We repeat, and cannot be too emphatic in our declaration, that the right of trial by jury must be preserved, that every effort must be made to see that every safeguard which the legislature has thrown about the jury system in this Commonwealth is not in any way interfered with or infringed upon, and that not only the spirit but the letter of the law must be followed in that particular. We must ever be vigilant to see that the laws and rules designed to secure impartial juries are not relaxed, for if they are injustice must inevitably result. Attorneys and litigants are interested in the fair and impartial administration of justice, and we should therefore be very zealous in protecting it from any suspicion of wrongdoing.

We next pass to the question of error in the charge of the trial judge to the jury. A careful reading of the charge convinces us that the court committed error in charging the jury on the question of right of way. The conduct of motorists at street intersections is governed by the rule laid down in Weber v. Greenebaum, 270 Pa. 382, 385, as follows:

"Where the paths of two approaching vehicles cross at the intersection of

212

public streets, the driver at the left must give way, unless so far in advance of the other as to afford reasonable time to clear the crossing and thus, in all probability, avoid a collision." See Weinberg v. Pavitt et al., 304 Pa. 312, 316.

The plaintiff's motion for a new trial is granted.