## Commonwealth v. Hottinger

*J. E. Niemond,* district attorney, for Commonwealth.
*Edred J. Pennell,* for defendant.

BARNETT, P. J., January 9, 1937.—Defendant was convicted upon an indictment charging him with failure to stop and render assistance after having been involved in an automobile accident resulting in injury to two persons, in violation of subsection *(b)* of section 1025 of The Vehicle Code of May 1, 1929, P. L. 905, as amended by the Act of June 22, 1931, P. L. 751. He has moved for a new trial and in arrest of judgment.

The conviction was based upon what seems to us the convincing weight of the credible testimony, and should not be set aside unless for compelling reasons. Of the reasons assigned in support of the motions only two, the fourth and fifth of the motion for new trial, both of which are repeated in the motion in arrest of judgment, seem to require discussion.

The accident occurred on the night of September 2, 1936, when Thomas Heydrick and his wife Betty, standing beside their car, which was parked off the right side of the road, headed west, were struck and severely injured by a car moving rapidly eastward and not stopping after the collision. As the result of investigation made by the Sheriff of Juniata County, defendant was arrested on September 16th, charged with aggravated assault and battery, and, in default of bail fixed by the justice at $500, was committed to the county jail. On September 24th he was arrested in jail on the additional charge of failure to stop after the accident. Bail was again set at $500, in default of which defendant was recommitted to jail, where he remained to the time of his trial. The justice's return

of the second arrest states: "Defendant arrested same day and brought before me and waives hearing and in default of $500 bail was committed", etc. Counsel for defendant denies that a hearing was waived, stating that he represented defendant when he was brought before the justice upon the second arrest and specifically demanded a hearing, which was not accorded at the time because, as the sheriff and the district attorney explained, the injured persons, who were the Commonwealth's only eyewitnesses, could not be brought from the hospital. No hearing was held before the trial. The next term of the quarter sessions and the next session of the grand jury, which was held at the same time, began December 7th, on which day the grand jury returned a true bill against defendant on the charge of failing to stop, etc. The case was tried on December 8th and defendant was found guilty. Before the jury was sworn, defendant's counsel presented a motion in writing to quash the indictment on the ground that defendant had not been given a preliminary hearing. This motion was refused. Defendant now asks for the arrest of judgment on the verdict or for a new trial on the ground that he had not had a preliminary hearing.

The rule undoubtedly is that a defendant must be given a prompt hearing after his arrest, but there are exceptions to the rule. In a case taken from defendant's brief, Commonwealth v. Sweetlick, 19 Dist. R. 397, an indictment for aggravated assault and battery, Van Swearingen, J., says:

"... the defendant must be given a preliminary hearing before the next meeting of the grand jury following his arrest, unless there is some pressing reason to the contrary. Cases may arise where there is sufficient reason for not giving the defendant a hearing before the next meeting of the grand jury, but they are exceptional. In the present case, if the prosecutor had been so badly injured as to have been unable to attend a hearing sooner, and his presence as a witness was necessary, that would have been a sufficient reason."

Here we have the "sufficient reason" in the persons of Mr. and Mrs. Heydrick, who when a hearing was demanded were in the hospital, and at the time of the trial were only partially recovered from their very serious injuries. Mr. Heydrick appeared in court on crutches and was with difficulty able to enter the witness stand. Mrs. Heydrick was carried into the courtroom, her leg at full length in a plaster cast, and testified from the chair in which she was placed near the jury. The two were not merely material but essential witnesses for the Commonwealth. They did not reside in Juniata County and it would have been impracticable, if not impossible, to have brought them sooner from the hospital at Lewistown, or from their more distant home, to attend a hearing.

Defendant was entitled to a prompt trial and the district attorney properly brought the bill of indictment before the next grand jury, although there had been no preliminary hearing. If defendant had been unprepared to proceed to trial, after his motion to quash the indictment had been refused, he should have moved for a continuance, which would doubtless have been granted on a very slight showing that he had been prevented from properly preparing his case by lack of knowledge which a hearing might have afforded him. He did not so move, and his defense showed that he was entirely familiar with the nature of the accusation against him. The accident occurred about eight miles east of East Waterford, on the public road to Port Royal. Defendant was prepared with witnesses to prove when he left East Waterford, what he did at Port Royal and later at Mifflintown and on the way thence to his home at East Waterford. He had as witnesses the two passengers who made the trip with him. His own testimony and that of his witnesses covered the hour and took him past the place of the accident. To grant either of his motions on the ground that he was in any way prejudiced by the Commonwealth's failure to hold a hearing, which the grave injuries of the victims of the collision made impracticable, would be to uphold, at the ex-

pense of prompt justice, a right of defendant which is in this case merely technical, for its withholding deprived him of no advantage at the trial which he could have had from a hearing. He was evidently fully informed before the trial as to the time and place of the collision and the persons injured in it, and that is all he could have learned through a hearing.

A panel of 24 jurors was called for the case. From this list the Commonwealth and defendant each challenged six. The tenth name on the panel was that of Edward Moyer, the eleventh Edmund Boyer, both of whom were jurors duly summoned for the term. The district attorney used his third challenge to strike off the name of Edward Moyer. Edmund Boyer was not challenged by either party. When the clerk read the names of the jurors who were left unchallenged, Moyer, through a mistake doubtless due to the similarity of the names, entered the jury box instead of Boyer, was sworn with the rest of the jury, sat throughout the trial and agreed to the verdict of guilty. The mistake was not discovered until after the trial. It is now argued that the case should be retried before another jury because of the presence of Moyer on the jury which convicted defendant. There would be force in the argument if it had been defendant rather than the Commonwealth who challenged Moyer. The learned counsel for defendant states that he might have challenged the juror if the Commonwealth had not, but does not say that he would have done so, or suggest that the juror was for any reason objectionable to him or to defendant. Here, again, we have an objection founded upon an irregularity, resulting from the innocent mistake of a juror, which wrought no actual prejudice to defendant's cause. In certain somewhat similar cases new trials have been ordered, but only where there has been reason to believe that the complaining party's rights may have been jeopardized or he has been deprived of a substantial right: See Commonwealth v. Baturin, 24 Pa. C. C. 181; Commonwealth v. Spring, 5 Clark 238; The People v. Ransom,

7 Wend. (N. Y.) 417; Tobin v. New Castle Twp., 23 Dist. R. 853. In each of these cases a man, not summoned as a juror, impersonated a regularly summoned juror and took his place in the jury box. He had no right to serve as a juror and his surreptitious intrusion was strongly suggestive of fraudulent motive. The parties presumably exercised their right of challenge in the belief that the duly summoned juror whose name had been called was in the box, and with no knowledge whatever of the stranger's imposture. A case closer to the one in hand is that of The First National Bank of Reynoldsville v. Ahlers, 7 Dist. R. 99. There John Staud (pronounced Stot) answered to and was sworn as a juror under the name of John Scott. Both Staud and Scott were regularly on the panel. The parties in challenging the jury naturally assumed that Scott and not Staud was in the box before them. A new trial was granted because neither party had had an opportunity to challenge Staud.

In this case both Moyer and Boyer were in the jury box before the counsel and their names were properly on the panel called for the trial. Both were duly summoned jurors. Moyer escaped challenge by either party until he was struck by the Commonwealth's third challenge. The fact that the Commonwealth challenged him may be some indication, though, of course, not conclusive, that he was acceptable to defendant. If this were a capital case, or if the court were in any doubt as to the justness of the verdict, even so slight and harmless an irregularity as is here involved might perhaps properly be accepted as ground for setting aside the verdict. Since we have no doubt as to the verdict and can discover not the least prejudice to defendant in the matter complained of, we are of opinion that a new trial on this ground should be refused. The matter is not ground for motion in arrest of judgment. In Commonwealth v. Potts, 241 Pa. 325, 328, where a question as to a juror, somewhat different from the one now considered, was raised, the Supreme

Court, quoting from Jewell v. Commonwealth, 22 Pa. 94, said:

" 'It is almost impossible to avoid mistakes like this. The occurrence of them does not diminish the safety of an innocent man, and whatever may be the humanity of the law, the escape of the guilty is not one of its objects. It would be a great public misfortune if a person charged with an offense could sit by while he is tried by a jury to whom he makes no objection, and after a verdict against him on the merits of his cause, set it aside on account of accidental and unavoidable irregularities in the summoning or calling of jurors, by which he was not prejudiced.' "

And now, January 9, 1937, the motions for new trial and in arrest of judgment are overruled and dismissed, and defendant is ordered to appear in court January 23, 1937, at 10 a.m., for sentence. Exceptions allowed defendant to the overruling of his motions.

From J. Howard Neely, Mifflintown.