## No. 13,109.

### STATE OF LOUISIANA vs. SAMUEL FURCO.

#### SYLLABUS.

1. While it would be in better form to go outside the coterie of court house officials for witnesses to the drawing of juries, a deputy clerk of court and

deputy coroner, acting in their individual capacities and not as officials, are not incompetent to serve as such witnesses.

2. The fact that an incompetent person happens to find a place on the grand jury, is no ground for the dissolution of that body. The judge may dismiss· such ineligible juror and supply his place from the names remaining on the· grand jury list.

3. It is not deemed essential that the judge should deliver anew a full charge· to the grand jury after each filling of a vacancy in the panel.

4. But the failure to administer the full oath of a grand juror to the person chosen from the grand jury list to fill such vacancy is reversible error when. timely objection is made to the indictment, the finding of which was par· ticipated in by the juror improperly sworn.

5. The abbreviated form of oath administered to those chosen with the fore· man, and who heard the full oath administered to him, suffices; but, later, when another is added to the panel to fill a vacancy, it will not do to qualify. him by the abbreviated oath.

6. A wise discretion to select his witnesses and manage the prosecution accord· ing to his best judgment under the eye and reasonable direction of the court,. is vested in the district attorney.

A PPEAL from the Twentieth Judicial District Court for the Par-- ish of Assumption.—*Guion, J.*

*M. J. Cunningham,* Attorney General, and *G. A. Gondran,* District: Attorney, for Plaintiff, Appellee.

*John Marks* and *Beattie & Beattie* for Defendant and Appellant.

Argued and submitted March 25, 1899.
Opinion handed down May 1, 1899.
Rehearing refused May 15, 1899.

The opinion of the court was delivered by

BLANCHARD, J. The accused was indicted for murder and con-- victed of manslaughter. From a sentence to six years' penal servi- tude, he appeals.

The first move made in his defense was a motion to quash the in- dictment on several grounds, viz.:—

1. Because the grand jury which returned the true bill was illegal,. for the reason that the jury commissioners did not draw the jury in the presence of two disinterested witnesses as prescribed by law.

2. Because after the grand jury had been empaneled and sworn and had commenced its work, it was found and adjudged that two of·

.its members were disqualified under the law, were discharged from the panel, and two others drawn from the grand jury list and sworn and installed as grand jurors .in their place.    That, later, it was found another member of the grand jury had permanently left the .State, and, thereupon, another name was drawn from the jury list to fill this vacancy, and the person so drawn was not qualified by the taking of any proper or sufficient oath to conscientiously perform his .duties as grand juror.

3.   Because after the juror last taken had been added to the panel, the grand jury had not been .charged anew as to its duties, but did the following day return the indictment against the accused.

4.   Because the first two grand jurors declared incompetent did not become so *after* being impaneled, but *were* so when impaneled, and their discharge dissolved the grand jury, which could not be afterwards added to and made a further continuing legal body.

This motion to quash was overruled and a bill of exceptions taken.

1st.   The jury commissioners for the parish selected the jury in accordance with Sec. 4 of Act 135 of 1898.   The clerk of the court was himself present acting as one of the commissioners.   There were two witnesses present witnessing the drawing of the jury.   One of these witnesses was deputy clerk of the court and the other was connected with the coroner's office of the parish in the capacity of so-called deputy coroner.   They, in their individual capacities, not as officials, had been summoned to attend the drawing of the jury as witnesses thereof. In acting as witnesses they did so as citizens and individuals—not as deputy clerk or deputy coroner.   The contention that they are not to be considered "competent and disinterested" witnesses, in the language of the statute, because they held the official positions designated, is of insufficient force to justify setting aside the panel.   While it would be in better form to go outside of the coterie of court house officials for persons to witness the drawing of the jury, the language of the statute does not exclude such officials from acting in their individual capacities as witnesses, and we cannot.

We are not unmindful of the fact the statute directs that in case of inability of the clerk of court to act as jury commissioner, his chief deputy is *ex officio* to serve as such.   But the chief deputy, in this instance, who acted as one of the witnesses, was not serving as jury commissioner.   The clerk himself was there performing that duty,

·and, hence, the deputy was a stranger to the proceeding except in his capacity as citizen called to witness the drawing.

2nd. Some days subsequent to the impaneling of the grand jury, it was found that one of them could not read and write the English language. Whereupon the judge ordered his dismissal from the panel because of disqualification. Still later another juror was dismissed because found also to be disqualified. Having found these jurors to be without the proper qualification, it was competent for the judge to dismiss them and supply their places by two other persons whose names were duly drawn from those yet remaining upon the grand jury list. Sec. 7, Act 135 of 1898.

A third grand juror, having left the State permanently and thus created a vacancy, another drawing from the grand jury list became necessary and Thos. J. Dyer was drawn, sworn and thereafter sat with the grand jury, participating in the finding of the indictment.

It is strenuously insisted on by the accused that Dyer must be considered as not having been sworn. This contention is based on the form of oath administered to him. It was as follows: "You do solemnly swear that the oath your foreman has taken on his part you will observe and keep on your part—so help you God."

The method of inpaneling a grand jury is about as follows:—The jury commissioners select the names of twenty persons to serve as grand jurors for the next ensuing six months. Sec. 7, Act 135 of 1898. These twenty persons are summoned by the sheriff to appear in court on a day named and they do so appear. The judge of the court, then, from this grand jury list of twenty, selects a suitable person to act as foreman of the grand jury about to be organized. Sec. 8, Act 135 of 1898. This person so selected as foreman has then administered to him the usual oath of grand jurors. Following this the sheriff, under the direction of the court, draws from the grand jury list of names, one by one the names of the jurors until eleven answer, and these eleven, with the foreman, constitute the grand jury. The practice, in administering the oath to these eleven so drawn, appears not to be to repeat over again the oath taken by the foreman, but a formula like that administered to the grand juror Dyer.

Those drawn to serve as grand jurors are present and hear the oath as the same is administered to the foreman, and, accordingly, it is not necessary to repeat over again to the eleven the full oath. The abbreviated form, such as that administered to Dyer, suffices. But·

when a vacancy occurs in the panel and it becomes necessary to fill it from those remaining on the grand jury list, as in case of the selection of Dyer, the regular oath in full of a grand juror should be administered to such person so selected, and the failure to do so is reversible error, when, as in this case, timely objection is made to the indictment, the finding of which was participated in by the juror improperly sworn.

The abbreviated oath administered to those chosen with the foreman, and who heard the full oath administered to him, is all right; but later, when another is added to the panel, it will not do to qualify him by the abbreviated oath.

Unless he were present and heard the oath administered to the foreman, the abbreviated formula is equivalent to no intelligible oath administered to him at all, and a grand juror not duly sworn vitiates all indictments in the finding of which he took part where seasonable complaint is made.

We feel constrained to hold that it was error in the court below in not sustaining the motion to quash on this ground.

The case might properly end here by reversal of the judgment and remanding for further proceedings, but inasmuch as the other points raised by the defense are important in the criminal practice, we deem it wise, for the guidance of the courts, to consider and determine the same.

3rd. A grand jury having been fully charged by the judge on the day of its organization, it is not required by the statute that he should charge it fully anew each time another juror is added to fill a vacancy occurring.

It appears in the instant case, however, that after the new jurors were added to fill vacancies the judge did charge the jury anew as to the necessity of reporting all crimes and offenses, and as to the necessity of secrecy.

4th. We can not give our sanction to the proposition that, should a person, not having the qualification prescribed by the statute for a grand juror, be placed accidently or inadvertantly upon the grand jury list of twenty, and be drawn in the make up of the jury, and serves upon it, the entire panel of the grand jury is stricken with nullity. To hold this would be to precipitate endless confusion upon the administration of criminal justice throughout the State. Nor does the statute warrant such holding.

Care should be taken, first, by the jury commission to exclude incompetent persons from the grand jury list; next, by the judge to prevent an incompetent person, who happens to get upon the grand jury list, from being included in the grand jury organization. But if an incompetent person should happen to find a place on the grand jury, it is no ground for the dissolution of that body. As soon, however, as his disqualification comes to the knowledge of the judge, it is his duty, as was done in the instant case, to dismiss such person, declare a vacancy and fill it by drawing from the remaining names on the grand jury list.

There is force in the contention that, within the meaning of the jury statute under consideration, the disqualification exists only from the time when it becomes known to the court; and finding a person on the jury who is disqualified, whether his disqualification antedates his selection or develops afterward, it equally presents the case of a vacancy that the judge may order filled by a further drawing from the grand jury list. And as none of the incompetent persons dismissed from the panel were serving upon the grand jury at the time the present indictment was returned, we do not see that the accused has just cause of complaint on that score.

In this respect the case at bar differs from State vs. Hammond, 2 Woods Reps. 197; State vs. Clough, 49 Me. 573; State vs. Thibodeaux, 48 La. Ann. 601; 8 R. 613; 21 La. Ann. 25, and other cases cited by counsel for defendant. In these cases, incompetent persons actually sat upon the grand jury and participated in the finding of the true bills.

Another bill of exceptions was reserved to the ruling of the court refusing the motion of counsel for the accused to compel the district attorney to call, on behalf of the prosecution, certain witnesses who were alleged to have been present at the homocide and had knowledge of facts relating to the same.

It seems that after the State had announced its case closed so far as further evidence was concerned, counsel for defendant stated that there were in the witness room two witnesses whose presence at the time of the homocide had been shown by the testimony adduced on the part of the State, and he thereupon called upon the State to put these persons on the witness stand, to the end that what they knew about the case might be stated to the jury, and giving the accused the opportunity of cross-examination. The prosecuting attorney declined

to call these persons as witnesses and the court refused to direct him to do so.

This is averred to be reversible error. The parties referred to had been subpoenaed by the defense, not by the State.

In Louisiana, as elsewhere, the humane policy of the law has ever been that it were better "ten guilty men escape than one innocent man should suffer."

Furthermore, the rule obtains here that the officer prosecuting on behalf of the State represents the public interest, which can never be promoted by the conviction of the innocent. All the information possible relating to a crime charged to have been committed should be disclosed. The State has no interest to suppress real facts, whether they sustain the prosecution, or overthrow it.

The State is far better served when an innocent man escapes conviction for the crime he did not commit, than it is when a guilty man is brought to punishment for the crime he did commit.

This is the general rule that should guide the courts in their administration of criminal justice, and the law officers of the commonwealth in conducting prosecutions.

At the same time a wise discretion to select his witnesses and manage the prosecution according to his best judgment under the eye and reasonable direction of the court, to the end that the law may be vindicated and the guilty brought to punishment, is vested in the district attorney. State vs. Williams, 30 La. Ann. 843.

The witnesses in question, in the instant case, were in court by the action of the accused. He had called them as his witnesses, and when the State declined the invitation to put them on the stand, they were put upon the stand by the defense. What they knew of the case, therefore, went to the jury.

They, likely, did not testify as the defendant hoped they would, and his case may have been prejudiced thereby. But this can not be held sufficient ground to set aside this verdict and remand the case. State vs. Ford, 42 La. Ann. 259.

The matters set forth in the bill of exception relating to the denial of the motion for new trial and that in arrest of judgment have been, for the most part, already discussed and disposed of.

What is further urged in regard to the absence of a witness named Testa, has had our attention. Without going into its discussion, we think the trial judge ruled properly therein.

The same is true of the objection raised with respect to the inter-preter who was sworn at the instance of the accused to translate the utterances of witnesses who testified in the Italian language; and of the further complaint that the district attorney filed an information, the day following the trial, against the accused, charging him with cutting and stabbing one of his witnesses.

One or two minor matters of objection are suggested in briefs or counsel for the accused, but since they do not form the subject matter of bills of exception, nor are brought to our attention by an assign-ment of errors, filed here, we decline to consider the same.

Because of the failure to administer a sufficient oath to the grand juror Dyer, as hereinbefore set forth, it is ordered, adjudged and de-creed that the verdict, sentence, and judgment appealed from is avoid-ed and reversed, and the case is remanded for further proceedings ac-cording to law—the accused to remain in the custody of the law.