(114 So. 171)

No. 28618.

**STATE v. PHILLIPS.**

July 11, 1927. Rehearing Denied Oct. 4, 1927.

*(Syllabus by Editorial Staff.)*

1. **Criminal law ☞1166(3)—Refusal to grant more than an hour's time to examine indictment and venire list held without prejudice to defendant.**

In murder prosecution, where defendant was called for arraignment a few minutes after return of indictment, refusal to grant him more than an hour's time to examine the indictment and venire list *held* without prejudice, where his motions required to be urged before pleading to indictment were considered on the merits without reference to whether they should have been filed before pleading to indictment.

2. **Criminal law ☞261(2)—After impliedly permitting withdrawal of plea to indictment, it was unnecessary to rearraign defendant (Act No. 31 of 1926).**

After impliedly permitting defendant to withdraw plea to indictment by considering motions which should have been urged prior to arraignment, it was unnecessary under Act No. 31 of 1926 to rearraign defendant.

3. **Criminal law ☞622(2)—Granting severance to one jointly indicted with defendant, without proof showing his defenses were antagonistic to those of defendant, held not error (Act No. 157 of 1916).**

In murder prosecution granting severance to one jointly indicted with defendant in the same bill on ground that his and defendant's defenses were antagonistic, without proof showing that defenses were antagonistic and that severance was necessary, *held* without prejudice to defendant, in view of Act No. 157 of 1916.

4. **Criminal law ☞622(1)—District attorney may of his own motion with court's consent place either defendant jointly indicted on trial separately.**

In murder prosecution where two defendants are jointly indicted in the same bill, the district attorney may of his own motion with consent of court place either defendant on trial separately if he sees proper to exercise such privilege, and neither defendant may complain.

5. **Jury ☞59(½)—Right of jury commissioner to office cannot be inquired into collaterally in attempt to annul proceedings of jury commission.**

The right of a jury commissioner to office cannot be inquired into collaterally in an attempt to annul proceedings of the jury commission.

6. **Jury ☞59(2)—Jury commissioner forfeiting office by qualifying as village alderman held a "de facto officer" and his acts valid.**

Though a jury commissioner who participated in selecting venires for grand and petit juries forfeited his office by accepting and qualifying as a village alderman, he was nevertheless a "member de facto" of the jury commission, and his acts as such and those of the commission of which he was a member when venire lists were selected were valid.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, De Facto Officer.]

7. **Officers ☞104—Acts of an officer de facto should be recognized as valid.**

The acts of an officer de facto so far as they affect the public should be recognized as valid.

8. **Criminal law ☞589(1)—Refusal of continuance until defendant's suit against jury commissioner to oust him from office was disposed of held proper.**

In murder prosecution, where defendant's motion to quash indictment because jury commissioner had forfeited his office was overruled, refusal to grant him continuance until his suit to oust the jury commissioner from office was disposed of *held* not error, where suit was instituted by defendant personally and could not reasonably have resulted in removal of the commissioner.

9. **Officers ☞104—An act valid when performed remains valid, and acts of officers de facto are valid as to all except themselves.**

An act valid when performed remains valid, and the act of an officer de facto, though he

be not an officer de jure also, is valid as to all except himself.

**10. Jury ⬥�top64—Jury commission having improperly struck names from general venire timely corrected list by placing names thereon (Act No. 135 of 1898, § 6).**

Where jury commission in discharge of duties under Act No. 135 of 1898, § 6, improperly struck names of three persons from jury list, error therein was properly corrected when at the same meeting of the commission the names stricken were replaced on the list.

**11. Indictment and information ⬥⟶137(1)—Motion to quash indictment for irregularities in revising general venire list is sustained only for great wrong or fraud (Act No. 135 of 1898, § 15).**

· To justify sustaining motion to quash indictment for irregularities in revising general venire list, it must appear that great wrong was committed or fraud practiced in selection of venire, since errors of fact causing striking of a few names from the list improperly are not sufficient, in view of Act No. 135 of 1898, § 15.

**12. Jury ⬥⟶82(1)—Overruling motion to quash . array of petit jurors for irregularities held proper.**

In murder prosecution overruling motion to quash array of petit jurors because of irregularities in revising the general venire list *held* without error, where there was no evidence that the commission in striking names therefrom acted fraudulently and no great wrong resulted.

**13. Grand jury ⬥⟶15—Fact ⟍that criminal charge was pending against grand juror at time he was impaneled rendered him incompetent (Act No. 135 of 1898, § 1).**

Fact that a criminal charge was pending against a grand juror at the time he was impaneled as such rendered him incompetent under Act No. 135 of 1898, § 1.

**14. Grand jury ⬥⟶20—Removal of grand juror because of incompetency and resummoning venire and drawing name of substitute held proper (Act No. 135 of 1898, §§ 1, 8; Act No. 155 of 1906).**

Where after impaneling of grand jury and retirement to grand jury room trial judge learned that charge of assault and battery was pending against named juror, which under Act No. 135 of 1898, § 1, rendered him incompetent, removing him from grand jury, causing venire to be resummoned and drawing substitute's name from envelope *held* proper, in view of section 8 and Act No. 155 of 1906.

**15. Jury ⬥⟶82(2)—Drawing names from box into which names were emptied from envelope in which they were placed by jury commission held not irregularity (Act No. 58 of 1904; Act No. 135 of 1898, § 8).**

In murder prosecution drawing names of petit jury from box into which names were emptied from envelope in which they were placed by the jury commission at time of drawing venire of 30 *held* not fatal departure from Act No. 58 of 1904 so as to require reversal, since that act is directory only and Act No. 135 of 1898, § 8, applies only to grand jury.

**16. Criminal law ⬥⟶1035(5)—Relationship of . juror as second cousin of deceased held too remote to justify reversal, where he was not questioned on voir dire.**

In murder prosecution, relationship of juror as second cousin of deceased by both blood and marriage *held* too remote to justify the Supreme Court to disturb verdict of conviction, when on voir dire examination juror was not questioned as to his relationship.

**17. Criminal law ⬥⟶1111(1) — Statement of trial judge that juror was not examined as to relationship controls statement in brief.**

Where defendant insists in brief he questioned juror as to his relationship to deceased, statement of trial judge that juror was not examined thereon must prevail.

**18. Criminal law ⬥⟶1115(2) — Defendant, to avail himself of juror's incompetency, must show juror was examined and that his answers showed he was competent.**

For accused to avail himself of incompetency of a juror to obtain new trial, it must appear that juror was examined concerning the point giving rise to the incompetency and that from his answer it appeared he was competent.

**19. Homicide ⬥⟶319—Alleged newly discovered . evidence as to whether one wound was inflicted instead of two held insufficient to call for new trial.**

In murder prosecution alleged newly discovered evidence as to whether wound in deceased's shoulder was inflicted at time of homicide or after inquest was held or as to whether one wound was inflicted instead of two *held* not of sufficient importance to call for granting new trial.

Appeal from Tenth Judicial District Court, Parish of Natchitoches; John F. Stephens, Judge.

Hugh Phillips was convicted of murder, and he appeals. Affirmed.

Jas. W. Jones, of Natchitoches, and T. A. Carter, of Alexandria, for appellant.

Percy Saint, Atty. Gen., and S. R. Thomas, Dist. Atty., of Natchitoches (James P. Guillot, of Derry, of counsel), for the State.

OVERTON, J. Defendant was indicted with one Virgie Fletcher on the charge of murdering Fred Delacardo in the parish of Natchitoches in February, 1927. A severance was granted in the case, and Phillips was tried, found guilty as charged, and sentenced to death. From the verdict rendered and the sentence pronounced he prosecutes this appeal.

[1] What is properly the first bill of exceptions, found in the record, is numbered 2, and the bill, which is properly the second bill, is numbered 1. It appears from bill No. 2 that, on March 7, 1927, within a few minutes after the indictment herein was returned, Phillips, whom, we shall hereafter refer to, so far as practicable, as the defendant, was called for arraignment. Defendant objected to being arraigned so early after the return of the indictment, upon the ground, according to the per curiam of the trial judge, that he had not had time to read the indictment, and that he desired time to examine it and also to examine the venire list and various court orders, and, according to the statement of defendant, as appears from the recitals of the bill, prepared by him and presented to the court for signature, on the ground that he desired to consult with his counsel and file certain preliminary motions—that is, such as are usually filed prior to arraignment. In response to this objection the court informed defendant, through his counsel, that he would be given an hour in which to examine the indictment. The indictment was then presented to defendant's counsel, who glanced at it, refused to accept the hour offered, and notified the court that defendant would stand on his objection. Defendant was then arraigned, and he urges that he was prejudiced by the refusal of the court to grant him sufficient time before arraignment to protect his rights.

Even assuming that defendant's version of the objection urged by him and of what occurred is correct, still we think that he has no just cause of complaint. His contention is that he was injured because the court refused to give him sufficient time to make the proper investigation before arraignment and to prepare and urge such motions as the law requires to be urged before pleading to the indictment. It appears, however, from the per curiam attached to the bill, and the per curiam is supported by other parts of the record, that every motion offered by defendant was considered on its merits, without reference to whether it should have been filed before pleading to the indictment, and that no plea or motion was rejected by the court because it was filed after arraignment.

[2] The effect of trying and considering such motions as should have been urged before pleading to the indictment, as, for instance, the motions to quash the indictment, which will be considered hereafter, was to permit the withdrawal of the plea made on arraignment to the indictment. Therefore, as defendant's motions were considered as if he had not been arraigned, under an implied withdrawal of the plea to the indictment, for the purposes of the motions, and as it appears that he had and used ample time in which to prepare and file the motions filed by him, and as it does not appear that he suffered the slightest injury by the early arraignment, our conclusion is that the bill is not well founded. While no contention to the contrary is made, it may be added that it was

unnecessary to rearraign defendant, under the present law, after impliedly permitting the withdrawal of the plea to the indictment, by considering such motions as should have been urged prior to arraignment, for only one arraignment was necessary, and that was had. Act 31 of 1926.

[3] The next bill to be considered is the one designated in the record as No. 1. It appears from this bill that Virgie Fletcher, who was indicted with the defendant, Phillips, in the same bill, moved the court to grant him a severance on the ground that his and Phillips' defenses were antagonistic. The district attorney immediately announced that he had no objection to urge against the severance, and moved that the fixing of the case against Fletcher be set aside and that the case as against him be fixed for another day. The defendant, Phillips, objected to the granting of the severance, unless proof should be adduced showing that the defenses were antagonistic and that the severance was necessary. The court overruled the objection made by Phillips, and permitted the district attorney to refix the case against Fletcher for another day, thereby in effect, granting the severance. Phillips urges that the granting of the severance injured him in that it enabled the district attorney to use Fletcher as a witness against him.

[4] The district attorney had the legal right to consent to the severance. He even had the right, of his own motion, at least, with the consent of the court, to place either defendant upon trial separately, if he saw proper to exercise the privilege, and neither had the right to complain. State v. Birbiglia, 149 La. 4, 88 So. 533. It does not appear whether the district attorney, after the severance was granted, placed Fletcher on the stand as a witness against defendant. If he did, it does not follow that defendant has any legal right to complain, for Fletcher, to say the least, had the right to consent expressly or impliedly that the district attorney place him upon the stand as a witness against defendant. Act 157 of 1916. In our opinion the bill discloses no error.

[5, 6] We shall now consider bills No. 3 and No. 7. The first of these bills was taken to the overruling of a motion to quash the indictment on the ground that it was returned by a grand jury, drawn from a venire, selected by an incompetent body, in that Luther Page, one of the jury commissioners, who participated in selecting the venire, had forfeited his office as jury commissioner by accepting a commission and qualifying as an alderman of the village of Robeline, La. Bill No. 7 was taken to the overruling of a motion to quash the venire of petit jurors, from which the jury to try defendant was later selected, upon the ground that the venire was drawn by an incompetent body, for the same reason urged in the motion to quash the indictment—that is, because Page participated in the drawing of the venire after he had forfeited his office as jury commissioner.

The record discloses that Page was duly appointed and qualified as jury commissioner, and that thereafter he received a commission as alderman of the village of Robeline and took the oath of office as such. After qualifying as alderman he continued to serve as a jury commissioner, and to all appearances was recognized as such. The court overruled both motions to quash, substantially on the ground that Page's right to the office could not be inquired into collaterally in an attempt to annul the proceedings of the jury commission of which he was a member, and substantially upon the ground that Page was at least a member de facto of the jury commission, and that his acts as such and those of the commission of which he was a member were valid. The ruling is correct. State v. White, 153 La. 300, 95 So. 776. State v. Smith, 153 La. 577, 96 So. 127, overruling

conflicting decisions; State v. Mitchell, 153 La. 585, 96 So. 130; State v. Moreau, 153 La. 671, 96 So. 527; State v. White, 156 La. 770, 101 So. 136. In State v. Moreau, cited above, it was said:

"Because an officer has committed some act, which in law operates as a forfeiture of his office, but who nevertheless remains in possession thereof, does not render his acts invalid in so far as third persons and the public are concerned. Those acts are valid, if otherwise legal, as the acts of an officer de facto. Thus, it has been held that where a justice of the peace removed from the county for which elected, and thereby, under the statute, vacated his office, but nevertheless continued to discharge the duties thereof, he is a justice of the peace de facto, until ousted by legal proceedings, and his acts as such are valid within the rule above mentioned; and the same has been held true as to a judge or a justice of the peace, who has accepted an incompatible office, or has been elected to and accepted a seat in the Legislature, and has thereby vacated, under the law, his former office, but who has nevertheless continued to discharge its duties. [Citing] Throop, Public Officers, § 631."

[7]. There is no healthier doctrine than that the acts of an officer de facto, so far as they affect the public, should be recognized as valid. The court was correct in overruling both motions to quash.

[8, 9] It is proper in this connection to consider bill No. 9, for it is connected with the two bills just considered. It appears from this bill that after the motion to quash the indictment on the ground that Page had forfeited his office as jury commissioner was overruled, defendant filed a suit against Page to remove him from the office of jury commissioner, to have the selection of the venire from which the grand jury was drawn declared illegal and the indictment annulled because Page had participated in the selection of the venire from which the grand jury that returned the bill was drawn, thus attempting, by this suit, to avoid the effect of the ruling that Page's right to the office could not be collaterally brought into question, and to bring about the quashing of the indictment by removing him from office. The suit had not been disposed of when this case was called for trial. Defendant therefore moved that the present case be continued until that suit should be disposed of, and included in his motion the ground that the effect of that suit would be also to show the illegality of the venire of petit jurors from which was to be selected the jury for his trial. The court overruled the motion for a continuance, and it is to this ruling that the present bill was taken. The ruling was correct. The suit against Page was equivalent to no suit at all. It was instituted by defendant personally. As a jury commissioner is an officer, the suit to remove Page should have been instituted in the name of the state by the proper official. As the suit could not have reasonably resulted in the removal of Page by reason of the defective manner in which it was instituted, there was no reason to grant the continuance. There is, however, a better and stronger reason why it was proper to overrule the motion. It is this: Page was a jury commissioner de facto when he participated in the proceedings of the jury commission. As he was a jury commissioner de facto at that time—a fact which the court had found in passing on the motion to quash —the proceedings of the commission were valid, and, being valid, then they would remain valid, notwithstanding it might appear later, in a suit to oust Page from office, properly brought, that he was not a jury commissioner de jure and was not such when he participated in the proceedings, and although the suit might terminate in his removal from office. This is so because an act, valid when performed, remains valid, and the act of an officer de facto, though he be not an officer de jure also, is valid as to all except himself. State v. White, supra, 156 La. 770, 101 So. 136. There was no error in denying the continuance.

[10] Bill No. 4 was taken to the overruling of a motion to quash the indictment for alleged irregularities in the revision of the general venire list of 300. It appears from this bill that the court overruled a motion to quash the indictment on the ground that the jury commission improperly struck from the general venire list various names, among whom were the names of William Franton, Lawrence O'Quinn, and L. E. Prothro. The record discloses that the commission, in discharging its duties under section 6 of Act 135 of 1898, by revising the general venire list, struck therefrom the names of those mentioned above. The jury commission later found that the names of the three persons mentioned were improperly stricken from the list, and at the same meeting placed them on the list again, and selected the three persons named to be members of the venire of 20 persons from which the grand jury was to be drawn. These three were members of the grand jury that indicted defendant. The bill possesses no merit. The jury commission, having discovered its error, acted properly by timely correcting it.

[11] Bill No. 5, like bill No. 4, was taken to the overruling of a motion to quash the indictment because of alleged irregularities in revising the general venire list. The motion that was overruled is based on the ground that the names of 19 persons were improperly stricken from the list by the jury commission while the commission was pretending to revise it, and were accordingly improperly withdrawn from the general venire box. The record shows that 7 of these names appeared on the general venire list after it was completed and that the persons bearing them were selected by the commission as members of the grand jury venire of 20. Therefore it appears that the error, to this extent, if made, was corrected. Of the remaining 12 names, so far as the record discloses, some of them were properly stricken from the general venire list and withdrawn from the box. However, there are a few names which, properly speaking, should not have been stricken from the list and withdrawn from the box before supplementing the list to the required 300 names. The striking of these names was due, however, to erroneous findings of fact by the commission. There is no evidence to the effect that the commission, in striking them, acted fraudulently, nor does it appear that any great wrong resulted. To justify the sustaining of the motion to quash, on this ground, it should appear that some great wrong was committed, or that some fraud was practiced, in the selection of the venire. Errors of fact, causing the striking of a few names from the general venire list improperly, are not sufficient. Jury commissions are not required to be wholly free from error in their proceedings. Section 15 of Act 135 of 1898; State v. Davis, 154 La. 295, 97 So. 449. In our view, this bill is not well founded.

[12] Bill No. 8 is similar to bill No. 5, which has just been considered, except that, instead of having been taken to the overruling of a motion to quash the indictment, because of irregularities in revising the general venire list, it was reserved to the overruling of a motion to quash the array of petit jurors, because of the same irregularities. Both motions are dependent on the same evidence. We therefore consider that bill No. 8 is not well founded for the same reasons that we considered that bill No. 5 was not well founded.

[13, 14] Bill No. 6 was also reserved to the overruling of a motion to quash the indictment. The motion, which was the third one filed with that object in view, is based upon the ground that the indictment was returned by an illegally constituted grand jury, made illegal by the unlawful removal of E. W. Bryant from that body and by the substitution of J. M. Coffey in Bryant's place. It appears

that soon after the grand jury had been impaneled and charged, and had retired to the grand jury room to proceed with its labors, the trial judge learned that a charge of assault and battery was pending against Bryant, and was pending against him when he was drawn and sworn as a grand juror. The affidavit, preferring the charge, was lost at the time of the trial of this motion. However, the minutes of the court show that the affidavit was before the court, when Bryant was discharged, and the record otherwise shows that the charge was preferred on the Saturday preceding the impaneling of the grand jury, but that the affidavit preferring it did not reach the courthouse until after the grand jury had been impaneled. The fact that there was a criminal charge pending against Bryant at the time he was impaneled as a grand juror rendered him an incompetent juror. Section 1 of Act 135 of 1898. The trial judge was therefore correct in removing him from the grand jury. After the removal of Bryant, the trial judge caused those on the grand jury venire, who had not been called as grand jurors, to be resummoned, as disclosed by the minutes, and from the envelope containing their names, the name of Coffey was drawn, and he was duly sworn as a grand juror and charged as such. The proceeding was regular. Section 8 of Act 135 of 1898, and Act 155 of 1906; State v. Furco, 51 La. Ann. 1082, 25 So. 951. The motion to quash was properly overruled.

[15] The next bill, in proper order, to be considered, is bill No. 11. In the impaneling of the petit jury for the trial of the case, the names of the jurors were drawn from a box into which they had been emptied from the envelope in which they had been placed by the jury commission at the time of the drawing of the venire of 30 for petit jury service. Defendant objected to the drawing of the names from the box and insisted that they be drawn from the envelope in which they had

been placed by the jury commission. The law provides that the names of those selected and drawn by the jury commission to constitute the venires of grand and petit jurors be placed by the commission in envelopes, with the proper indorsements thereon, the envelopes to be sealed by the commission. Act 58 of 1904. The law also provides that, in the impaneling of a grand jury, the names shall be drawn from the envelope in which they were placed by the jury commission. Section 8 of Act 135 of 1898. However, as relates to the impaneling of petit juries, no such provision is made. The usual practice in impaneling petit juries is to empty the names contained in the envelope into a box provided for that purpose and draw the names from the box. In fact, it has been held that, even in the impaneling of grand juries, where there is a departure from the provision of the statute, directing that the names of the grand jurors be drawn from the envelope, in which they were placed, by drawing them from a box provided for that purpose into which they had been emptied, the departure was not fatal, the law being directory in that respect. State v. Mitchell, 119 La. 374, 44 So. 132. Our conclusion is that the bill discloses no error.

[16] The last bill to be considered is bill No. 10. This bill was taken to the overruling of a motion for a new trial. The only questions presented by it which we may consider, and which we have not, are two. One of these is that Calvin Edwards, one of the petit jurors who sat in the case, was related to the deceased, and the other is in reference to alleged newly discovered evidence.

[17, 18] With reference to the relationship alleged, the affidavits, attached to the motion for a new trial, show that the juror was a second cousin of the deceased by both blood and marriage. Our law does not seem to fix precisely the exact degree of relationship that will disqualify a juror. However, in our

164 La.—20

view, the relationship, in this instance, is too remote to justify us in disturbing the verdict. Moreover, when the juror was examined on his voir dire, he was not questioned as to his relationship to the deceased. It is true that defendant insists in his brief, and alleges in his motion for a new trial, that he did so question him, but the trial judge, in his per curiam, distinctly states that the juror was not examined touching the alleged relationship. It is well settled, under such circumstances, that the statement of the trial judge prevails. Hence, it must be accepted that the juror was not examined touching the relationship. For an accused to avail himself of the incompetency of a juror to obtain a new trial, it must appear that the juror was examined concerning the point giving rise to the incompetency, and that, from his answer, it appeared he was competent. State v. Nash, 45 La. Ann. 1137, 13 So. 732, 734; State v. Carricut, 157 La. 140, 102 So. 98.

[19] With reference to the alleged newly discovered evidence, it appears that defendant's defense was that he did not kill the deceased, but that Virgie Fletcher, who was indicted with him, killed him. It also appears, as disclosed by the per curiam attached to the bill, that two wounds were inflicted on the deceased, one near the left ear, which penetrated the jugular vein, and the other in one of his shoulders, each of which was inflicted with a knife. It also appears from the same source that the wound in the shoulder was discovered when the deceased was being dressed for burial, and that it was proven by physicians, who examined the body at that time, that both wounds were inflicted prior to death. It also appears from the same source that the evidence established that Fletcher inflicted the wound in the shoulder, and that not less than eight witnesses testified that defendant cut the throat of the deceased. Defendant contends that since the trial he has discovered that there was but one wound on the body of the deceased at the time of the inquest, which was the wound in his neck, and that discovery of that fact will enable him to show that he did not kill the deceased. He attached to the motion for a new trial two affidavits for the purpose of showing that there was only one wound on the body of the deceased at the time of the inquest. As to whether or not the wound in the shoulder was inflicted at the time of the homicide, or after the inquest was held, or as to whether one wound was inflicted instead of two, is not of sufficient importance to call for the granting of a new trial. We fail to see wherein the newly discovered evidence could be of material benefit to defendant. The bill fails to disclose error.

For the reasons assigned, the verdict and the sentence appealed from are affirmed.