# Commonwealth *v.* Meyers, Appellant.

*Criminal law—Trial—Answer to points—Charge.*

A trial judge commits reversible error in affirming a lengthy point for charge which purports to recite the facts to be considered by the jury, if he fails to refer to other portions of the proof which are just as essential for the consideration of the jury as the matters referred to in the point.

*Criminal law—Liquor law—Club—Sale of liquor at profit.*

On the trial of an indictment of a steward of a club for selling liquor without a license it is reversible error for the trial judge to instruct the jury that if the distribution of the common stock of liquor among the members of the club resulted in any profits or any loss, it would be unlawful and would make those concerned in such distribution guilty of an illegal sale of liquor.

There is no impropriety in the refusal of the Court of Quarter Sessions to quash an indictment against a steward of a club for an unlawful sale of liquor because one of the grand jurors, who was also a member of the organization served by the defendant, was asked to withdraw during the deliberations of his fellows on the bill of indictment.

On the trial of such an indictment it is not error for the trial judge to refuse to compel the private counsel aiding in the prosecution to file his warrant of attorney.

Argued Oct. 20, 1915.    Appeal, No. 30, April T., 1915, by defendant, from judgment of Q. S. Lawrence Co., June Session, 1914, No. 63, on verdict of guilty in case of Commonwealth v. Frank W. Myers.    Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART·and TREXLER, JJ.    Reversed.

Indictment for selling liquor without a license.    Before WILLIAM E. PORTER, P. J.

At the trial it appeared that the defendant was a member of the Loyal Order of Moose.    He was also one of the stewards employed by the order in a club or grill room established for·the benefit of the members of the order where liquors, tobacco and food were distributed to the members.

The prosecutor presented the following points:

2. In determining whether or not the distribution of liquors to members, as exercised by the Loyal Order of Moose, of which this defendant is a steward, is a mere incident of the organization, you may take into consideration the fact that four stewards are engaged in conducting the sideboard and selling these tickets, while but two other persons are employed in looking after the wants of members in the other social features conducted by the order.    The further fact that the club rooms are kept open and liquors served every day in the·week from 8 o'clock a. m., until 11 o'clock p. m., while the lodge proper meets but once a week, and·the further fact that about $4\frac{1}{2}$ times as much money is received from the sale

of these books of tickets as is taken in yearly in dues from the members for carrying on the work of the order; and if you find from all the evidence in the case that the distribution of liquors is not a mere incident of this organization then such distribution, whether equitable or not, is unlawful and any person distributing liquor and taking in exchange therefor money, tickets or other valuable thing would be guilty of selling liquor without a license. Ans. Affirmed. (10)

3. If the distribution of liquors is made to the members of the club either at a loss or a profit, then the distribution is not equitable and is unlawful and the person making such distribution and taking in exchange therefor money, tickets or other valuable thing would be guilty of selling liquor without a license. Ans. Affirmed. (11)

4. Thomas Moore, the secretary of the house committee, has testified that the money received from the sale of the yellow tickets was not sufficient to pay for the liquors consumed by the members, but that the money received from the sale of the red tickets was sufficient to pay the deficit on the liquors, the salaries of the stewards, janitors, secretary of the house committee and the incidental expenses of the club rooms and leave a balance for the year ending April 1, 1914, of $9,-965.55. This testimony has not been contradictory and if you believe it to be true and further, if you believe the defendant, himself, when he says that he sold these tickets to members and served them liquors in exchange for the yellow tickets, such distribution is unlawful; in other words, it would not be a distribution but would be a sale.

Ans. Affirmed. (12)

5. Under all the evidence the verdict must be "not guilty." (13)

Verdict of guilty upon which judgment of sentence was passed.

*Errors assigned,* among others, were (1) in refusing to quash the indictment; (10-13) above instructions quoting them, and (15) in refusing to compel private counsel in the prosecution to file his warrant of attorney.

*J. Norman Martin,* with him *Norman A. Martin* and *Thomas W. Dickey,* for appellant.—It is well settled that a grand juror may be challenged for cause: Rolland v. Com., 82 Pa. 306; Nickles v. Nickles, 1 Lack. Jur. 41; Com. v. Reber, 10 D. R. 683.

Defendant's demand for the warrant of attorney was of right under the Act of April 14, 1834, P. L. 354: Mercier v. Mercier, 2 Dallas 142.

We insist that the club had a right to purchase a supply of liquors and distribute them among its members without cost or charge of any kind. If it did this at cost or less than cost or free there could be no complaint: Com. v. Carey, 151 Pa. 368; Com. v. Peters, 2 Pa. Superior Ct. 1.

Whether there was a loss upon the distribution of these liquors was a matter that could be complained of only by the members of the club: Altenburg v. Com., 126 Pa. 602; Com. v. Carey, 151 Pa. 368.

*Clyde V. Ailey,* District Attorney, with him *James A. Chambers,* for appellee.—This appears to be good grounds for the challenge of a juror for cause and if so it would be proper for the grand juror to retire during the consideration of the case by the grand jury: Respublica v. Richards, 1 Yeates 480.

Even in civil actions the filing of a warrant of attorney is not a matter of course, upon the request of the defendant, but is a matter subject to the discretion of the court: Com. v. Serfass, 5 Pa. C. C. R. 139.

Where the purpose is gain and an attempt is being made to profit by the traffic and evade the payment of license fees and the laws intended to regulate and re-

strain the traffic in liquors the business is unlawful and those engaged therein are guilty under the terms of the statute: Com. v. Krotzer, 55 Pa. Superior Ct. 351.

OPINION BY HEAD, J., March 1, 1916:

The record shows the branch of the Loyal Order of Moose in New Castle, Pennsylvania, is composed of upwards of one thousand members. It is chartered not only by the national organization, of which it is a part, but also by the Court of Common Pleas of Lawrence County. In connection with its lodge and club rooms it maintained a grill, a restaurant and a buffet, from which food, liquors, tobacco and the like were served to the members. The defendant, a steward employed to serve these articles, was indicted for selling liquor without a license and convicted. After sentence he took this appeal.

When the testimony had been all delivered, counsel for the Commonwealth presented to the learned trial judge a number of written points for charge. The second of these covers more than a half of a closely printed page of the paper book. It undertakes to recite the facts to be considered by the jury in making up their verdict. By the unqualified affirmance of that point the learned trial judge adopted, as his own, the conclusions of the prosecuting officer in respect to what should be considered by the jury. We quote from the point:—"You may take into consideration the fact that four stewards are engaged in conducting the sideboard and selling these tickets, while but two other persons are employed in looking after the wants of members in the other social features conducted by the order." We can find no warrant in the evidence to justify the learned trial judge declaring it to be a fact that only "two other persons" completed the staff of those who conducted the affairs of the order. There was evidence from which the jury might have found such to be the fact; but there was also proof that a salaried secretary was constantly engaged in look-

ing after the business of the organization, the conduct of its club rooms, the purchase of supplies, &c. There was testimony that indicated the house committee, of seven members, was an active body and rendered services in connection with the conduct of the affairs and business of the order. If the learned trial judge saw fit to advert to the evidence concerning these matters, he should have laid the whole of it impartially before the jury so that they might find from all of it just what were the facts. The second point referred to should have been refused and the tenth assignment of error must therefore be sustained.

In answering the Commonwealth's third point the learned trial judge was again led into error. By affirming that point he instructed the jury that if the distribution of the common stock of liquor among the members of the order resulted in any profit or any loss, it would be unlawful and would make those concerned in such distribution guilty of an illegal sale of liquor. As we view it, this amounted to a binding direction. Under this instruction a legal distribution would be impracticable if not impossible. Very often the question whether a series of transactions has resulted in an apparent profit or loss depends entirely on the system by which the accounts are kept. In one system charges may be made against the fund to be distributed for a proportionate part of the cost of light, heat, rent for room space and other like matters. In other cases the fund would not be diminished by any such charges and might thus show at least a paper profit.

In Union League v. Ransley, 39 Pa. Superior Ct. 514, we had occasion to consider whether the extensive distribution of cigars, at the Union League of Philadelphia, amounted to a sale of such cigars within the meaning of the statutes relating to the payment of mercantile taxes. After reviewing the leading case of Klein v. Livingston Club, 177 Pa. 224, and applying its principles to the facts then before us, we reached the conclusion the Union

League was not engaged in the sale of cigars and there-. fore was not a dealer within the operation of the tax statutes. A brief quotation from the opinion of the court in the case cited will throw some light on the point we are now considering:—"It is true that it appears, from the reports made to the governing body of the receipts and expenditures incident to the handling of cigars, the receipts exceeded in amount the charges specially set over against them, but it also appears that this resulted only in a paper profit rather than a real one, because under the system of bookkeeping, adopted by the club for the guidance and information of its officers, no charges were made for many important items, such as light, heat, floor space, service, etc., that would necessarily attend the business of an ordinary dealer in such articles. We are constrained to hold, therefore, under the authority of the case cited, that the appellant is not a vender of or dealer in merchandise within the meaning of the Act of 1899, and is not subject to the mercantile tax imposed on such dealers by that act." We think therefore the standard laid down by the learned trial judge in affirming the Commonwealth's third point was too stringent. The point should have been refused and the eleventh assignment of error is sustained. For substantially the same reasons we think the twelfth specification of error to be well taken. The fourth point of the Commonwealth, like the second and third, should have been refused.

In cases like the one before us, it has been said more than once that if, from the evidence, the jury reach the clear conclusion the real purpose of an organization is the illegal sale and distribution of intoxicating liquor, they may with propriety go behind any disguise or sham structure set up for the purpose of concealing the facts. On the other hand, it is recognized that organizations created in good faith for a lawful purpose, and honestly working out such purpose, may, if such be the pleasure of the members, provide proper accommodations to serve

such members with food, tobacco, liquors and other like things. We know of no principal on which such a corporate body, in order to escape the ban of illegality, must so nicely adjust every element of the commercial side of the transaction that it can be truthfully said there was neither a dollar of profit nor a dollar of loss resulting from such distribution during a month, a year or other fixed period.

The bill was found by a legally constituted grand jury. There was no impropriety in the refusal of the court to quash it because one of the grand jurors, who was also a member of the organization served by the defendant, was asked to withdraw during the deliberations of his fellows on that bill. The first specification is overruled. It is not apparent to us that any legal right of the defendant, secured to him by the Constitution or laws of Pennsylvania, was impaired or destroyed because the learned trial judge refused to compel the private counsel aiding in the prosecution to file his warrant of attorney. The second specification is overruled and this carries the third one with it.

Passing to the seventh specification, we feel obliged to conclude that a considerable portion of the general charge therein complained of is subject to the same criticism briefly noted as to the earlier specifications and this assignment also must be sustained.

The judgment is reversed and a venire facias de novo awarded.