## Herbert Warriner Post No. 70's License

*Joseph P. Gaffney, Jr.,* for appellant.

*J. Myron Shimer,* for Pennsylvania Liquor Control Board.

SMITH, P. J., November 20, 1941. — This matter comes before the court on an appeal by the Herbert Warriner Post No. 70, American Legion, from the

order of the Pennsylvania Liquor Control Board refusing its application for a club liquor license. The reason for the refusal of said application is "that the quota for the City of Philadelphia is exceeded. Therefore, the board is prohibited by the Act no. 388 (Act of June 24, 1939, P. L. 806) from issuing new licenses except hotels, for the city".

The Act of June 24, 1939, P. L. 806, is an act limiting the number of licenses for the retail sale of liquor, malt or brewed beverages to be issued by the Pennsylvania Liquor Control Board. It is the contention of appellant that section 2 of the said Act of 1939 excludes or excepts clubs from the provisions of the restrictions set forth in the said act.

Section 2 of the Act of 1939 provides:

"No licenses shall hereafter be granted by the Pennsylvania Liquor Control Board for the retail sale of malt or brewed beverages, or the retail sale of liquor and malt or brewed beverages, in excess of one of such licenses, of any class, for each one thousand inhabitants or fraction thereof, in any municipality, exclusive of licenses granted to hotels, as defined in this act, and clubs. . . . Nothing contained in this section shall be construed as denying the right to the Pennsylvania Liquor Control Board to renew or to transfer existing retail licenses of any class, notwithstanding that the number of such licensed places in a municipality shall exceed the limitation hereinbefore prescribed; but where such number exceeds the limitation prescribed by this act, no new license, except for hotels as defined in this act, shall be granted as long as said limitation is exceeded."

The Act of 1939, supra, has been interpreted in various ways by the courts of original jurisdiction in this Commonwealth. There is no provision in the act for an appeal from the order or decree entered and therefore confusion has resulted. There appears to be no ambiguity in the legislative intent. The first part of

the said section 2 deals with the granting of licenses of the two classes therein mentioned to not more than one each for every 1,000 residents, exclusive of hotels as defined in the act and clubs. That portion of the section prescribes the quota as fixed and excludes clubs from its restrictions as long as the quota is not reached. The second portion of section 2 of the said act provides that when the licenses of the two classes, excluding hotels and clubs, shall have exceeded the quota fixed, no new license shall be granted excepting to hotels. Thus, from this it can be observed that it was the legislative intent, when the said quota has been exceeded, to place clubs in the prohibition with all other licensees excepting hotels. According to the last census, the population of Philadelphia was 1,931,334. The licenses now in effect in Philadelphia are 2,787. Under the quota fixed by the act, the number of licenses that should exist in Philadelphia is 1,932. Philadelphia has thus exceeded its quota fixed by the act of assembly and the Pennsylvania Liquor Control Board has no legal authority to issue or grant a new license for the retail sale of liquor and malt or brewed beverages to appellant.

The argument of appellant is without merit. A reading of the Acts of November 29, 1933, P. L. 15, June 16, 1937, P. L. 1762, and June 24, 1939, P. L. 806, seems to show a legislative intent to restrict the granting of licenses to sell liquor and malt beverages in the cities and towns of this Commonwealth because of the evil that may result from the uncontrolled traffic in them. This restriction applies to all licensees including clubs.

The law in this Commonwealth has made an "about face" since the time when Klein v. Livingston Club, 177 Pa. 224, and Union League v. Ransley, 39 Pa. Superior Ct. 514, held that a bona fide club did not sell its liquor to members but only made a distribution to them of their common property. Section 15 of the Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, 47 PS §744-410, provides that on petition of the

Attorney General, the district attorney, or 15 or more taxpayers, residents of a municipality where the hotel, restaurant, or club is located, the court of common pleas may, after hearing, sustain or revoke the license, etc. Here it seems to have been the intent of the assembly to treat the holders of all liquor licenses alike. The said Act of 1939 being restrictive or limiting the number of licenses to be issued, it is against logic and good sense to argue that the legislature intended to permit a loophole to exist through which this restriction would become a nullity. It defined provisions imposing definite regulations within which a hotel must qualify. That restriction was made to prevent the issuance of licenses to places merely bearing the name of hotel. Up to the quota fixed, the said act permitted hotels as defined by the act and clubs to have licenses exclusive of those held by taprooms and restaurants, but when the quota was exceeded the extra privilege given to the clubs was withdrawn.

In Benner et al. v. Tacony Athletic Assn. et al., 328 Pa. 577, Mr. Justice Stern said (p. 580) :

"The ordinary meaning of a 'sale' is a transfer, or an agreement for the transfer, of title to property for a consideration. These requisite elements are present when a member of a club orders a drink and pays for it. The club corporation purchases liquor and resells it just as any other vendor; the only difference is that its customers are limited to its membership."

In Blauner's, Inc., et al., v. Philadelphia et al., 330 Pa. 342, Mr. Justice Drew said (p. 349) :

"A club transaction is surely a 'transfer of . . . possession . . . for a consideration. . . .' The ordinance carries its own definition. We are, therefore, unconcerned with the technical requisites, urged by counsel, of a sale at common law, or with the meaning of the same term in the special context of other enactments, such as the Brooks High License Law and the Mercantile License Tax Act construed in the cases

cited: *Klein v. Livingston Club*, 177 Pa. 224; *Union League v. Ransley*, 39 Pa. Superior Ct. 514; *Com. v. Meyers*, 62 Pa. Superior Ct. 223. Our latest pronouncement, not restricted to the construction of any statute, is that 'the ordinary meaning of a "sale" is a transfer . . . of title to property for a consideration. These requisite elements are present when a member of a club orders a drink and pays for it. The club corporation purchases liquor and resells it just as any other vendor; the only difference is that its customers are limited to its membership' . . ."

A reading of the above cases shows an intention on the part of the appellate courts to consider the sale of liquor and alcoholic beverages in clubs the same as sales made in hotels, restaurants, and taprooms. Through all the recent cases the policy of restraint seems to prevail.

In the case of Pottstown Veterans Association License, 36 D. & C. 593 (Montgomery County), Knight, P. J., said (p. 594):

" 'The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. Every law shall be construed, if possible, to give effect to all its provisions': Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 51.

" 'In ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following presumptions among others:

" '(1) That the Legislature does not intend a result that is absurd, impossible of execution or unreasonable;

" '(2) That the Legislature intends the entire statute to be effective and certain': Statutory Construction Act, supra, sec. 52."

A similar opinion was written by Kun, J., Court of Common Pleas No. 1, Philadelphia County, In re Appeal of Societa' Di Mutuo Soccorso San Rocco, 43 D. & C. 358 (1941).

In Spankard's Liquor License Case, 138 Pa. Superior Ct. 251, Keller, P. J., said (pp. 258-59) :

" *'Neither the petitioner nor any other person in this state has any property in the right to sell liquor.'* (Italics supplied). Whether any license shall be granted, and what licenses shall be granted are legislative questions *(Schlaudecker v. Marshall,* 72 Pa. 200, 206) and subject at all times to the control of the legislature.

"A liquor license, even when granted, is not a property right. It is only a privilege. . . .

"The regulation of the sale of intoxicating liquors is a matter peculiarly within the police power of the several states, because of the evils which result from the uncontrolled traffic in them."

It will therefore be observed that a license to sell liquor is not a property right and never has been. It is merely a privilege granted to a person by legislative enactment. It is within the police power of the Commonwealth to adopt by legislative decree or prohibition a restriction that no new liquor licenses shall be granted to any class but hotels as long as the quota prescribed in the said act of assembly has been exceeded.

The contention of appellant would lead to a condition where, after the quota had been passed, clubs already formed in a municipality could sell liquor equal in the aggregate to all other licensees. This certainly could not have been the intent of the legislature as expressed in the Act of June 24, 1939, P. L. 806, providing for a limitation of the number of licenses issued and fixing a quota.

## Order

And now, to wit, November 20, 1941, the appeal of the Herbert Warriner Post No. 70, American Legion, from the action of the Pennsylvania Liquor Control Board refusing to grant a license to sell liquor, malt or brewed beverages is dismissed at the cost of appellant.