Commonwealth *v.* Levinson, Appellant.

Argued December 12, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*James D. Crawford*, with him *Bernard G. Segal, Eugene A. Spector*, and *Schnader, Harrison, Segal & Lewis*, for appellant.

*Walter M. Phillips, Jr.*, Deputy Attorney General, with him *Nancy J. Moore*, Assistant Attorney General, for Commonwealth, appellee.

OPINION BY JACOBS, J., March 29, 1976:

The instant appeal is another controversy arising out of the activities of the January 1974 Philadelphia County Special Investigating Grand Jury.[1] Subsequent to return of that entity's Fourteenth Presentment, appellant Hillel Levinson was indicted by the April, 1975 regular Philadelphia County Indicting Grand Jury on various charges. Appellant Levinson contends here that his motion to quash the April 1975 indictment should have been granted below. We agree that on the particular facts of this case the indictment should have been quashed. We therefore reverse that portion of the order dated July 31, 1975 dismissing appellant's Motion to Quash Indictment and Supplemental Motion to Quash Indictment.

The procedural history and validity of the January 1974 Philadelphia County Special Investigating Grand Jury (hereinafter 1974 Investigating Grand Jury)[2] has been reviewed and upheld by our Supreme Court in *In re Investigation of January 1974 Philadelphia County*

---

1. *See, e.g., In re Falone,* 464 Pa. 42, 346 A.2d 9 (1975); *In re Martorano,* 464 Pa. 66, 346 A.2d 22 (1975); *In re LaRussa,* 464 Pa. 86, 346 A.2d 32 (1975); *In re Investigation of January, 1974 Philadelphia County Grand Jury,* 458 Pa. 586, 328 A.2d 485 (1974); *January, 1974 Special Investigating Grand Jury Subpoenas Nos. 806 and 807, Appeal of Kenneth Shapiro,* 238 Pa. Superior Ct. 486, 357 A.2d 632 (1976); *January, 1974 Special Investigating Grand Jury Appeal of Philip R.T. Carroll,* 238 Pa. Superior Ct. 479, 357 A.2d 628 (1976); *In re January, 1974 Special Investigating Grand Jury, Re: Petition of Tracey Service Co.,* 238 Pa. Superior Ct. 476, 357 A.2d 633 (1976); *Appeal of Natale F. Carabello,* 238 Pa. Superior Ct. 479, 357 A.2d 628 (1976); *In re: Augustine Salvitti, January, 1974 Special Investigating Grand Jury Subpoenas Nos. 868 and 1073,* 238 Pa. Superior Ct. 465, 357 A.2d 622 (1976).

2. We are not mindful of the fact that the 1974 Investigating Grand Jury was not, strictly speaking, a "special grand jury;" rather, it was a "grand jury conducting a special investigation." *See In re Investigation of January 1974 Philadelphia Grand Jury,* 458 Pa. 586, 595 n. 4, 328 A.2d 485, 489 n.4 (1974); *Smith v. Gallagher,* 408 Pa. 551, 185 A.2d 135 (1962).

*Grand Jury*, 458 Pa. 586, 328 A.2d 485 (1974). We therefore need not repeat what has already been recorded there except to note that the 1974 Investigating Grand Jury came into existence as such on January 31, 1974 when Judge TAKIFF, on his own motion, specially charged and indefinitely extended the term of the January 1974 regular Grand Jury of Philadelphia County. The 1974 Investigating Grand Jury was specially charged to conduct an investigation into nine specific areas, including official corruption in the City of Philadelphia, and to continue investigation into matters originally considered by the Special Investigating Grand Jury of June Term, 1972.

Appellant had testified before the June, 1972 Special Investigating Grand Jury on October 12, 1973. On October 30, 1974, and again on March 17, 1975, he was called before the 1974 Investigating Grand Jury and was questioned further concerning allegations that certain architects and engineers desiring contracts with the City of Philadelphia had been solicited to purchase tickets to a dinner given by the Democratic City Committee during the 1972 Presidential Campaign. Based on contradictions between appellant's testimony and that of various other witnesses and on inconsistencies between appellant's testimony before the 1974 Investigating Grand Jury and his testimony before the 1972 Special Investigating Grand Jury, the 1974 Investigating Grand Jury returned its twenty page Fourteenth Presentment recommending bills of indictment, on March 19, 1975.

On the 7th and 8th of April, 1975, appellant moved for leave to present evidence to the regular indicting Grand Jury, for a preliminary hearing, or for an order denying the Special Prosecutor leave to present the recommended bills of indictment to the indicting Grand Jury. These motions were denied by Judge LORD, as was a subsequent motion for certification. Appellant was thereafter indicted, on April 17, 1975, by the April, 1975

indicting Grand Jury.[3] Numerous pre-trial motions were then filed. These were denied, by order dated July 31, 1975. On August 1, 1975 appellant was allowed the instant appeal when Judge CHERRY certified three of the issues raised by appellant's pre-trial motions pursuant to §501(b) of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, No. 223, art. V, §501, 17 P.S. §211.501 (Supp. 1975-76).[4]

Appellant's first claim is two-pronged. He contends that he was denied due process of law because he was neither afforded a preliminary hearing prior to his indictment nor granted access to the grand jury minutes of the witnesses against him as a "partial substitute for a preliminary hearing."

Appellant concedes that under the holdings of our Supreme Court in *Commonwealth v. McCloskey*, 443 Pa. 117, 277 A.2d 764, *cert. denied*, 404 U.S. 1000 (1971) and *Commonwealth v. Columbia Investment Corp.*, 457 Pa. 353, 325 A.2d 289 (1974) a preliminary hearing prior to indictment is not required when a presentment has been issued by an investigating grand jury. However, he argues that the decision in *Commonwealth v. Mullen*, 460 Pa. 336, 333 A.2d 755 (1975) alters the holdings in *McCloskey* and *Columbia Investment Corp.*, supra. We do not agree. *Commonwealth v. Mullen*, supra, is inapposite because that case deals with the procedure to be

---

3. The indictment charged appellant with perjury, false swearing, extortion and with political activities violating the Act of April 6, 1939, P.L. 16, §1, 25 P.S. §2374 (1963) and the Home Rule Charter of the City of Philadelphia.

4. Judge CHERRY certified the issues as follows: (1) "... the presence of Juror Leon Karlinski [sic] at the 14th Presentment the day following the execution of an order removing him but prior to notice given of his removal." (2) "... the addition of six jurors to the investigating grand jury during the process of investigation and presentment of matters to it." (3) "the question with regard to the right to hear, face and question [witnesses] (although Judge CHERRY said *jurors*, the parties appear to agree that he meant *witnesses*) at preliminary hearing."

employed where there *is* a preliminary hearing. *Mullen* involved interpretation of Pa.R.Crim.P. 141, the rule which defines the rights of a defendant at a preliminary hearing, where a hearing *is held.* It was held in *Mullen* that Rule 141 does not limit a defendant *who has a preliminary hearing* to calling only those witnesses who would offer testimony favorable to his defense. Appellant seeks to expand a rule which allows a defendant to call favorable or unfavorable witnesses at a preliminary hearing into one allowing the introduction of evidence rebutting a prima facie case before the indicting grand jury. While we have taken note of appellant's argument that a preliminary hearing has been recently re-recognized as providing an important protective function, *Commonwealth v. Webster,* 462 Pa. 125, 337 A.2d 914 (1975), we are unconvinced that *Webster* or *Mullen* overrules the holding in *Commonwealth v. McCloskey,* supra, and in *Columbia Investment Corp.,* supra, that the protective functions of a preliminary hearing are fulfilled by the investigating grand jury and that notice of the charges is provided by its presentment. The record reveals that the presentment issued here was informative and exhaustive, consisting of over twenty pages of documentation and explanation.

The second prong of appellant's argument that he was denied due process by the lack of a preliminary hearing is his claim that he should have been allowed access, prior to trial, to the grand jury testimony of all witnesses who testified against him. We agree with the Commonwealth's claim that this issue was not certified by the court below. We therefore decline to rule on this issue, since it is not properly before us. *See* note 4, supra.

Appellant also claims that his indictment should be quashed because an "unauthorized person" was present during deliberation and voting on the Fourteenth Presentment. The record reveals that grand juror Leon Karlinski was removed from the 1974 Investigating Grand Jury on March 18, 1975, by order of Judge

BULLOCK.[5] This action was taken pursuant to a petition requesting grand juror Karlinski's removal filed by the Office of the Special Prosecutor. On March 19, 1975, the 1974 Investigating Grand Jury, including grand juror Karlinski, met and returned the Fourteenth Presentment, *after which* Judge BULLOCK's order was received.[6] Appellant contends that Mr. Karlinski was an unauthorized person in the grand jury room on March 19, 1975 and that his presence constitutes grounds for quashing the indictment.

Assuming, *arguendo*, that ex-grand juror Karlinski *was* a "person other than [a] juror" who was present while the grand jury was deliberating[7] or voting, *see* Pa.R.Crim.P. 209, the court below was still not required to quash the indictment on that basis absent a showing of prejudice to appellant. *See, Commonwealth v. Columbia Inv. Corp.*, supra, *Commonwealth v. Kirk*, 340 Pa. 346, 17 A.2d 195 (1941) *aff'g* 141 Pa. Superior Ct. 123, 14 A.2d 914 (1940); *Commonwealth v. Bradney*, 126 Pa. 199, 17 A. 600 (1889); *Commonwealth v. Brownmiller*, 141 Pa.

---

5. Judge BULLOCK succeeded Judge TAKIFF as supervising judge of the 1974 Investigating Grand Jury in February, 1975.

6. The record includes an affidavit of the Secretary of the 1974 Investigating Grand Jury to the effect that grand juror Karlinski participated in neither deliberation nor the vote on the Fourteenth Presentment. Printed Record at 207a. Appellee claims that, although the order was signed March 18, 1975, it was not received until the afternoon of March 19th. Supplemental Record at 27b.

7. There is some authority in the federal courts for the proposition that the mere presence of a disqualified grand juror amongst others does not vitiate an indictment: "... a disqualified juror is still a juror, he is not an interloper ...." *United States ex rel. McCann v. Thompson*, 144 F.2d 604, 606 (2d Cir.), *cert. denied*, 323 U.S. 790 (1944). *See Commonwealth v. Bradney*, 126 Pa. 199, 17 A. 600 (1889), holding that the mere presence of members of the District Attorney's office was not enough to quash and observing that the persons present were not intruders or meddlers. In view of our holding that prejudice will not be presumed on these facts and in view of the lack of a showing thereof, we need not determine if grand juror Karlinski's presence after his removal made him a person other than a juror.

Superior Ct. 107, 14 A.2d 907, *allocatur refused*, 141 Pa. Superior Ct. *xxxiii* (1940); *Commonwealth v. Meyers*, 62 Pa. Superior Ct. 223 (1916); *Commonwealth v. Hegedus*, 44 Pa. Superior Ct. 157 (1910).

Appellant impliedly argues that the mere fact of the dismissal raises a presumption of prejudice. Had grand juror Karlinski been dismissed for cause on *appellant's* motion, we might be constrained to agree; however, on these facts we will not hold that there is a presumption of prejudice. Moreover, appellant has not alleged any particular prejudicial effect. We therefore hold that the mere presence of ex-grand juror Karlinski in the grand jury room on the date in question, although an irregularity or defect, was not fatal to the subsequent indictment. *See, Commonwealth v. Evans*, 190 Pa. Superior Ct. 179, 154 A.2d 57, *cert. denied*, 364 U.S. 899, *rehearing denied*, 364 U.S. 939 (1959).

Appellant's final claim is that the Fourteenth Presentment and the indictment which resulted therefrom is invalid because of the substitution, on January 15, 1975, of six new grand jurors as replacements for original members of the 1974 Investigating Grand Jury who had died or had been excused. Appellant maintains that the substitution was unauthorized, that the substitution allowed the 1974 Investigating Grand Jury to attain a permanence which rendered its actions void, and that, by virtue of the alleged unauthorized character of the substitution, the six substituted grand jurors were unauthorized persons in the grand jury room on March 19, 1975.

A review of the relevant facts pertaining to this claim is essential to an understanding of the appellant's assertions. The facts are that the original complement of the January 1974 Grand Jury was sworn in early January of 1974 and was specially charged on January 31, 1974. Between May 29, 1974 and mid-January, 1975, one grand juror died and Judge TAKIFF temporarily

excused five members of the grand jury.[8] The latter action was apparently taken off-the-record. On January 15, 1975, six additional grand jurors were selected, sworn and the entire grand jury was again specially charged. The six additional jurors were chosen from among fifteen members of the original January 1974 Grand Jury panels, whose reasons for being unable to serve had seemingly expired.[9]

Thereafter, the 1974 Investigating Grand Jury, as reconstituted, continued its investigation and proceedings. On March 14, 1975 Judge BULLOCK excused an additional member of the grand jury and on March 18, 1975 grand juror Karlinski was removed. On March 19, 1975 the grand jury thus consisted of fifteen members of the original panel and six additional members. Grand juror Karlinski's presence swelled the total to twenty-two.

The Commonwealth's answer to appellant's pre-trial motions avers that the added jurors were read the testimony that they did not hear (because given prior to their empanelment) which was related to the Fourteenth Presentment.[10]

---

8. Judge TAKIFF'S affidavit, which is of record, indicates that five jurors were excused by him between May 29, 1974 and January 17, 1975, for cause. The basis for excuse were as follows: (1) entrance into law school; (2) change in family circumstances; (3) medical reasons; (4) assumption of full-time employment as a prison guard; (5) pursuit of a business opportunity. It appears that each juror was temporarily excused without benefit of a written order, until January 15, 1975, when all five were excused permanently and replaced. At least two of those temporarily excused were present on January 15, 1975.

9. Although Judge TAKIFF'S affidavit states that this occurred on January 17, 1975, the record of the proceedings is dated January 15, 1975 and the parties appear to agree that the latter date is correct. At the time of the substitution, the 1974 Investigating Grand Jury was reduced to seventeen members by virtue of the six vacancies, two over that required to form a grand jury, Pa.R.Crim.P. 201(a) and five over the number required to form a quorum, see Pa.R.Crim.P. 210(b); *Commonwealth v. Fudeman*, 396 Pa. 236, 152 A.2d 428, *cert. denied*, 361 U.S. 902 (1959).

10. The affidavit of Assistant Attorney General Tischler, which

Appellant's claim that the addition of the six grand jurors adversely affected its presentment and that the supplementation requires a quashing of the indictment is without merit if the substitution was proper. We must therefore consider the propriety of the substitution before we may determine its effect on the indictment.

Appellant asserts that no authority exists for the substitution. Appellee, on the other hand, seeks to persuade us that the action was authorized because of a proper exercise of Judge TAKIFF's discretion as supervising judge. Additionally, the Commonwealth urges that there *is* a statute supporting the action and that no statute, rule or case, in any event, declares that the substitution was *unauthorized*. Appellee specifically argues that the Act of March 31, 1860, P.L. 427, §41, 17 P.S. §§1152, 1233 (1962) (suspended in part by Pa.R.Crim.P. 1109 and 1125, insofar as the Act relates to petit juries) authorized Judge TAKIFF to add to the investigating grand jury when the ability to form a quorum was seriously endangered by vacancies created by death and excuse. The aforementioned Act provides, *inter alia:*

"All courts of criminal jurisdiction of this commonwealth shall be and are hereby authorized and required, when occasion shall render the same necessary, to order a tales de circumstantibus, either for the grand or petit jury, and all talesmen shall be liable to the same challenges, fines and penalties as the principal jurors ...."

was attached to the Commonwealth's answer, avers that he read the testimony of witnesses who appeared prior to January 15, 1975 *which was relevant* to the allegations contained in the Fourteenth Presentment. The Commonwealth's Answer to appellant's Motion to Quash states that appellant's testimony of October 12, 1973 and October 30, 1974 was read to the jury but that testimony of other witnesses appearing early in the investigation was *made available* to it.

Act of March 31, 1860, P.L. 427, §41, 17 P.S. §1233 (1962); *see* Act of April 14, 1834, P.L. 333, §144, 17 P.S. §1146 (1962).

Appellant apparently concedes the general applicability of the statute but insists that a *tales de circumstantibus*[11] is only "necessary" where the number serving has been reduced below the minimum number required to make a legally constituted grand jury. Since the current grand jury was not so reduced, he reasons that the addition was unauthorized because not "necessary," relying on *Commonwealth v. Little*, 42 Pa. C.C. 536 (Q.S. Wayne 1914).

We have examined the statutes and the case law and conclude that appellant is correct in his assertion that 17 P.S. §1152 and 17 P.S. §1233 do not provide authority for the substitution, albeit for a different reason than that which he has advanced. Both parties' reliance on interpretation of 17 P.S. §§1152, 1233 is misplaced because that statutory material does not apply to this situation. The acts authorizing the calling of talesmen are inapplicable here because talesmen may be called only after the jury *panel* is exhausted. The decision in *Commonwealth v. Little*, supra, so holds, as do the opinions in *Jewell v. Commonwealth*, 22 Pa. 94 (1853) and in *Williams v. Commonwealth*, 91 Pa. 493 (1879). *See* Pa.R.Crim.P. 1109(1) relating to petit juries. Since the panel was here not exhausted, talesmen could not be called. Moreover, since the six added persons were called from among the members of the January 1974 Grand Jury Panels, those called were not "talesmen," and their addition may not be sanctioned by reference to the statutes authorizing a call for talesmen.

***

11. *"Tales de circumstantibus"* refers to the opening words of the writ directing the sheriff to make up a deficiency of jurors out of "so many of the bystanders" or from the body of the county at large. *See Williams v. Commonwealth*, 91 Pa. 493 (1879); Black's Law Dictionary 1626 (4th ed. 1968).

Since the statutes relied on by the Commonwealth provided no authority for the substitution, we must look elsewhere to find it. Our research has disclosed no other relevant statute or case law. Nor do the Pennsylvania Rules of Criminal Procedure provide a basis. Pa.R.Crim.P. 200 through 224 deal with Grand Juries, but those Rules are primarily directed toward the regulation of *indicting* grand juries. *See, Commonwealth v. Columbia Inv. Corp.*, supra at 369, 325 A.2d at 297. Moreover, although Pa.R.Crim.P. 203(b) would, at first blush, appear to be instructive, on closer examination it is apparent that it is not. Rule 203 provides for replacement of grand jurors who have been stood aside or discharged *after challenge*, which must be made, in most cases, before the grand jurors are sworn. Pa.R.Crim.P. 201(b) is similarly inapplicable. Rule 201(b) merely allows the court to excuse a sufficient number of persons to reduce the panel to not more than twenty-three, as required by Rule 201(a). In sum, our Rules and statutes provide extensively for the procedure to be employed in obtaining the correct number of persons to form a grand jury; they are silent, however, concerning a procedure to be employed in adding to a grand jury once it has been formed. Although we have discovered relevant case law in other jurisdictions, we have found no Pennsylvania case on point, and our research elsewhere has disclosed but few decisions favoring mid-session substitution absent a statute specifically authorizing such action.[12]

---

12. *See* 38 C.J.S. *Grand Juries* §§23, 31 (1943). *See also In re Meckley*, 50 F. Supp. 274 (M.D. Pa.), *aff'd on other grounds*, 137 F.2d 310 (3d Cir.), *cert. denied*, 320 U.S. 760 (1943) (allowing substitution where selection made pursuant to statute). *State v. Phillips*, 164 La. 597, 114 So. 171 (1927) (removal of incompetent juror after grand jury retired proper under statute); *Posey v. State*, 86 Miss. 141, 38 So. 324 (1905) (statute allowed substitution after jury was sworn, where member excused). *But see United States v. Nevin*, 199 F. 831 (D. Colo. 1912); *Gilmore v. State*, 229 Ind. 359, 98 N.E.2d 677 (1951); *State v. Stevens*, 244 N.C. 40, 92 S.E.2d 409 (1956).

We are also mindful of the common law rule regarding substitution in a *petit jury*, to the effect that: "[a]t common law when during a trial a defect in jurors occurred due to the death of a juror, or the illness or misconduct of a juror, or other cause necessitating his discharge, the practice was to discharge the entire jury, but immediately to recall the other 11 jurors, call another juror to complete the 12, and from this point to empanel the jury de novo ...." Annot., 84 A.L.R.2d 1288, 1290, §1 (1962). The Pennsylvania view is not otherwise. Where a juror, after being sworn, fails to appear the court ought to either compel his attendance or dismiss the jury and empanel another. *Pennell v. Percival*, 13 Pa. 197 (1850); *see Lillie v. American Car and Foundry Co.*, 209 Pa. 161, 58 A. 272 (1904). The effect of this common law rule relating to petit juries has been largely avoided by the adoption of Pa.R.Crim.P. 1108, providing for alternates to be utilized in the event of the necessity for mid-trial replacement. *See generally* Annot., 84 A.L.R.2d 1288, 1290, §1 (1962).

After careful study and reflection we have determined that an analogous provision is provided by Pa.R.Crim.P. 201(a) and Pa.R.Crim.P. 210, for grand juries. Those rules provide that the grand jury shall consist of not less than fifteen nor more than twenty three and that twelve may constitute a quorum for approving an indictment. By virtue of these Rules of Criminal Procedure a provision for alternates for grand juries like Pa.R.Crim.P. 1108's provision for petit juries is thus unrequired. The grand jury is imbued from the date of its empanelment with eight built-in alternates since twenty three may be chosen and only fifteen need persevere.

Since the grand jury has "built-in alternates" and no authority appears for addition in excess thereof, we hold that the substitution here was unauthorized. Nor are we convinced that the supervising judge of the grand jury has an inherent power to add alternates in view of our

determination that the rules provide therefor. Moreover, since a proper number of persons were present from the original grand jury during the voting on the Fourteenth Presentment the original grand jury was still legally constituted and the added attendees were unauthorized persons because never properly made a part thereof. In reaching the preceding conclusion we have kept in mind the admonition of *Shenker v. Harr*, 332 Pa. 382, 2 A.2d 298 (1938) against anything approaching permanency in an investigating grand jury and have recognized that the allowance of free substitution at the discretion of the supervising judge, as urged by the Commonwealth, could well lead to the prolongation of the life of the grand jury which that case proscribed.

The Rules of Criminal Procedure provide for a workable number of inherent alternates, eight persons. When an investigating grand jury's complement has fallen below the minimum required by law, like a petit jury, it should be discharged, not rejuvenated by addition of persons who have had no opportunity to participate in the prior deliberations or witness the previous proceedings. Furthermore, this conclusion does not require that the work of a grand jury whose existence has terminated need go unfinished if necessity for investigation remains. A subsequent grand jury may be impaneled to conduct a continuation of investigation into similar areas of corruption, after judicial reevaluation. *See In re Investigation of January 1974 Philadelphia County Grand Jury*, supra at 599, 328 A.2d at 491. *But see Shenker v. Harr*, supra. We can perceive no other interpretation that maintains the balance between necessity for investigation and the prohibition on permanency mandated by stare decisis.

Having determined that the substitution was unauthorized we must still consider if it invalidated the presentment and the subsequent indictment. We have no doubt that, under the facts of this case, the presentment was invalid. The presence on the grand jury of *six*

persons who had not seen or heard witnesses who testified throughout the early phases of the investigation must be deemed inherently prejudicial. This aspect of the present case is readily distinguishable from the facts surrounding Mr. Karlinski's sole presence. While we recognize that every grand juror need not be present for the presentation of each piece of evidence, *see United States ex rel. McCann v. Thompson,* 144 F.2d 604, 606 (2d Cir.), *cert. denied,* 323 U.S. 790 (1944), *see also United States v. Armour & Co.,* 214 F. Supp. 123 (S.D. Calif. 1963); *United States v. Nevin,* 199 F. 831 (D. Colo. 1912), we are here faced with a situation wherein *all* of the six added persons were absent for *all* of the evidence presented before January 15, 1975, and where all *six* unauthorized persons were together present at the vote.

Appellee urges that under the rule set forth in *Commonwealth v. Evans,* supra, *see also Commonwealth v. Gross,* 172 Pa. Superior Ct. 85, 92 A.2d 251, *allocatur refused,* 172 Pa. Superior Ct. *xxiv* (1952); *Commonwealth v. Brownmiller,* supra, the addition of the six substitutes was an extraneous factor not to be considered on a motion to quash the indictment. This Court held in *Commonwealth v. Evans,* supra, that: "... the investigating grand jury and the indicting grand jury are separate legal bodies. Although both may have considered the same alleged crimes involving the same individuals, their proceedings, deliberations, and presentments are distinct. Extraneous matters affecting one may not influence the other, and irregularities before one are not always present in the other; the two bodies are unrelated in this respect. Consequently, an indictment by a regular grand jury is not necessarily tainted by some irregularity or improper influence alleged .to have affected the investigating grand jury. Com. v. Gross, supra, 172 Pa. Superior Ct. 85, 90, 91, 92 A.2d 251. At least, the irregularity or improper influence must be shown to have also affected the indicting grand jury. Nothing of this nature appears in this case. 'No

matter how irregular the investigatory proceedings before the grand jury may have been, the presentment at least furnished the district attorney with information sufficient to justify his application for leave to present a district attorney's bill.' Com. v. Brownmiller, 137 Pa. Superior Ct. 261, 267, 9 A.2d 155, 158." *Commonwealth v. Evans*, supra at 198-199, 154 A.2d at 69.

The holding in *Evans* and its progeny do not lay down a *per se* rule that irregularities in the investigating grand jury are cured by indictment by the regular grand jury, however. Rather, *Evans* holds that a matter affecting one does not necessarily affect the other and that a *mere* irregularity in an investigating grand jury proceeding does not, *per se*, invalidate an indictment based thereon. Under *Evans* a showing of prejudice must be made.

We find the facts of this case to be dissimilar from those present in the *Evans, Gross* and *Brownmiller* decisions, supra. In those cases little prejudice was shown and mere irregularities were held to have occurred before the investigating grand jury. In the present case a major irregularity is present; six unauthorized persons who were unable to hear testimony participated in deliberations and voting. Furthermore, in the case at bar appellant did not wait until after his indictment to voice his objection; he resisted submission of the presentment to the indicting grand jury and requested certification on its validity prior to the indictment. Since appellant preserved this issue below and because we view the addition of the six as inherently prejudicial and much more than a mere irregularity, we will not hold that the objected-to indictment cured the defects of the presentment upon which it was primarily based.

Because the defects in the presentment rendered it invalid, it should not have been submitted to the indicting grand jury. Moreover, it is clear from the specificity of the presentment that it could have provided the primary basis for the indictments. The submission of

the presentment under these circumstances was prejudicial and that prejudice could not but have affected the indicting grand jury. The motion to quash the indictment therefore should have been granted.[13]

That portion of the order of the court below which overruled the motion to quash the indictment is reversed.

HOFFMAN, J., concurs in the result.

CONCURRING AND DISSENTING OPINION BY SPAETH, J.:

In this case we are again presented with the difficult problem of striking a proper balance between the individual's right to be free from unfair prosecution and the community's right to the effective enforcement of the law. Although I agree with most of what the majority has said, I have myself struck a slightly different balance. Also, it seems to me that recent developments in the law warrant some comment.

I

I agree with the majority that under *Commonwealth v. McCloskey*, 443 Pa. 117, 277 A.2d 764, *cert. denied*, 404 U.S. 1000 (1971), and *Commonwealth v. Columbia Investment Corp.*, 457 Pa. 353, 325 A.2d 289 (1974), appellant was not entitled to a preliminary hearing before indictment; that we should not consider whether appellant should have been allowed access to the grand jury testimony, since that issue was not certified to us; that the mere presence in the grand jury room of ex-grand juror Karlinski was not fatal to the indictment;

---

13. We do not here hold that every presentment of the 1974 Investigating Grand Jury which was returned after the six were added and which led to an indictment was invalid. Our holding here is based on our conclusion that on these particular facts the substitution was more than a mere irregularity and that its result was prejudicial to appellant. Furthermore, we note that appellant challenged the presentment prior to its submission, thus preserving his objection to its validity and his claim regarding the prejudice created thereby.

and that the substitution of the six investigating grand jurors was unauthorized.

However, I cannot agree with the majority that the unauthorized substitution of the six investigating grand jurors was "inherently prejudicial" to appellant's rights. (Majority opinion at 403.) I can imagine situations where such a substitution, albeit improper, would have no adverse effect upon the rights of a person being investigated by the grand jury. For example, an investigating grand jury might unanimously return a presentment concerning a given person after all its members had heard all the testimony relative to that person. In such a situation, the unauthorized substitution of six jurors would be harmless.

I agree with the majority's (as I understand it, alternative) analysis that if actual prejudice is shown to have resulted from the unauthorized substitution, the indictments against appellant must be quashed. The majority does not say, however, that actual prejudice was shown. Rather, it only says that "it is clear from the specificity of the presentment that it *could have* provided the primary basis for the indictments." (Majority opinion at 404, emphasis added.) Noting this, Judge PRICE says in dissent that "[t]here is no evidence that the deliberations and proceedings of the indicting grand jury were not full and complete," adding that "an indictment cannot be invalidated by a mere suspicion." (Dissenting opinion at 411.) It seems to me that there is here much more than mere suspicion. If practice in other cases is any guide, *cf. Commonwealth v. McCloskey, supra,* the indicting grand jury may have had little or nothing before it except the presentment. In that event, appellant would have suffered actual prejudice. It is not clear from the record, however, what the indicting grand jury had before it. Therefore, I would vacate the lower court's order and remand for a hearing on this issue. If the evidence were to show that the presentment provided the primary impetus behind appellant's indictment, I would

join the majority. If, however, that were not the case, I would agree with Judge PRICE'S conclusion that the lower court was correct in refusing to quash the indictments.

## II

As the majority opinion indicates, resolution of appellant's attack upon the improper substitution of the six investigating grand jurors hinges upon the effect of the irregularity upon the indicting grand jury. The fundamental disagreement between the majority and dissenting opinions concerning this issue demonstrates that the isolation and detection of prejudice may prove elusive. Such case-by-case inquiry into possible irregularities in the composition of the investigating grand jury is uneconomical and a disservice to the valuable function served by that body. It should, therefore, be avoided, if — and the "if" is of critical importance — that avoidance can be accomplished without being unfair to the accused.

As stated by Chief Justice VANDERBILT:

"No community desires to live a hairbreadth above the criminal level, which might well be the case if there were no official organ of public protest. Such presentments are a great deterrent to official wrongdoing. By exposing wrongdoing, moreover, such presentments inspire public confidence in the capacity of the body politic to purge itself of untoward conditions."

*In re Presentment by Camden County Grand Jury*, 10 N.J. 23, 66, 89 A.2d 416, 444 (1952). *See also Johnson v. Superior Court*, 15 Cal. 3d 248, 256 n.1, 124 Cal. Rptr. 32, 37 n.1, 539 P.2d 792, 797 n.1 (1975) (MOSK, J., concurring) ("[t]he grand jury serves a valuable and productive role in the area of investigation, particularly with respect to governmental corruption or ineptitude"). In my view, this valuable role could be fulfilled, and any

possible prejudice resulting from irregularities in the investigating grand jury be fully cured, if it were held that following the presentment, the accused was entitled to a preliminary hearing, at which, after the accused had been afforded the valuable rights enumerated in Pa. R. Crim. P. 141(c), a judicial officer determined whether the accused should be held either for indictment or trial.

I recognize that this suggestion would necessitate the overruling of *Commonwealth v. McCloskey, supra,* and also of *Commonwealth v. Columbia Investment Corp., supra,* which followed *McCloskey.* In *McCloskey* our Supreme Court explicitly held that "an investigating grand jury presentment is a constitutionally permissible and reasonable alternative to a preliminary hearing." *Id.* at 140, 277 A.2d at 776. In arriving at this holding the Supreme Court noted that "[t]o accede to appellee's request would merely be subjecting the administration of criminal justice to another superfluous layer of delay and imposing an unwise burden upon our judicial process as well as upon the prosecutor and counsel for the defense with only a slight expectation for what at most would be a highly speculative *de minimis* advantage to an accused." *Id.* at 139, 277 A.2d at 775. Even so, I submit with deference that recent developments in the law suggest that the holding of *McCloskey* might be reconsidered.

The first development is the decision of the Supreme Court in *Commonwealth v. Webster,* 462 Pa. 125, 337 A.2d 914 (1975). While I agree with the majority's opinion in the present case that *Webster* does not overrule *McCloskey* and *Columbia Investment,* even so it represents, I suggest, a significant change in emphasis. In *Webster,* Mr. Justice ROBERTS (the author of the majority opinion in *McCloskey*), in rejecting challenges to the provisions of the state constitution and implementing legislation that at local option permit criminal prosecutions to be initiated either by indictment or information, emphasized the protective function of the

preliminary hearing. This emphasis, in my judgment, is inconsistent with the conclusion in *McCloskey* and *Columbia Investment* that a presentment is equivalent to a preliminary hearing. I submit that it is not. As Mr. Justice MOSK, joined by Chief Justice WRIGHT, observed in advocating that all persons accused of crime in California be afforded a post-indictment preliminary hearing, the preliminary hearing is the forum "which will permit the development not only of affirmative exculpatory evidence but also evidence gleaned from adequate cross-examination and confrontation of the state's witnesses." *Johnson v. Superior Court, supra,* at 269, 124 Cal. Rptr. at 46, 539 P.2d at 806.

The second development, also reflected in *Webster,* is the abolition of the indicting grand jury, not in all counties but in some, including Philadelphia. In November, 1973, the people of the Commonwealth approved a constitutional amendment permitting the courts of common pleas, with Supreme Court approval, to provide for the commencement of criminal proceedings by information rather than indictment. Pa.Const.Art. I, §10. This provision was implemented by the Act of Oct. 10, 1974, P.L. 713, No. 238, §1 *et seq.,* 17 P.S. §271 *et seq.* Section 3(b) of the Act, 17 P.S. §273(b), provides that the district attorney may not file an information "where a preliminary hearing has not been held or properly waived except as provided in the rules of criminal procedure." Section 5 of the Act, 17 P.S. §275, contains the qualification that nothing in the Act shall prohibit the impanelling or functioning of an investigating grand jury. Arguably, Section 5, and the proviso at the end of Section 3(b) ("except as provided in the rules of criminal procedure"), could be read as preserving *McCloskey's* holding that an investigating grand jury presentment serves as a substitute for a preliminary hearing. *See also* Note following Pa.R.Crim.P. 231. This is not, however, a necessary conclusion. The elimination, in Philadelphia and other

counties, of the indicting grand jury eliminates the "layer of delay" remarked upon in *McCloskey*. With that elimination the foundation of *McCloskey* is undermined — in my view, substantially. Section 3(b) might therefore be construed as meaning that even when an investigating grand jury has made a presentment, the district attorney may not file an information against the accused until a preliminary hearing has been held. Such a salutary construction would preserve the investigating grand jury's role, avoid procedural battles such as in the present case, and provide scrupulous protection of the rights of the accused.

I would remand for further proceedings.

DISSENTING OPINION BY PRICE, J.:

I respectfully dissent. As the majority notes, this Court has already recognized that: "...the investigating grand jury and the indicting grand jury are separate legal bodies. Although both may have considered the same alleged crimes involving the same individuals, their proceedings, deliberations, and presentments are distinct. Extraneous matters affecting one may not influence the other, and irregularities before one are not always present in the other; the two bodies are unrelated in this respect." *Commonwealth v. Evans*, 190 Pa. Superior Ct. 179, 198, 154 A.2d 57, 69 (1959), *cert. denied*, 364 U.S. 899 (1960), *rehearing denied*, 364 U.S. 939 (1961). Thus, we have concluded that a motion to quash an indictment should be denied unless it is shown that the indictment by the regular grand jury was tainted by the irregularity alleged to have affected the investigating grand jury. *Commonwealth v. Evans, supra.* Accord, *Commonwealth v. Gross*, 172 Pa. Superior Ct. 85, 92 A.2d 251 (1952). Here, even if it is assumed, *arguendo*, that the lower court improperly replaced six members of the investigating grand jury, I do not believe that it can be concluded from the record before this Court that the indicting grand jury was affected in any way by such irregularity in the investigating grand jury. The majori-

ty fails to hold, however, that the ". . . objected-to-indictment cured the defects of the presentment upon which it was *primarily based.*" (emphasis added) Instead, the majority speculatively concludes that "[i]t is clear from the specificity of the presentment that it *could have* provided the primary basis for the indictments." There is no evidence that the deliberations and proceedings of the indicting grand jury were not full and complete. A conclusion that the indictment was primarily based upon the presentment is simply not supported by the record. Certainly, an indictment cannot be invalidated by a mere suspicion that a grand jury was actuated by improper influences. *Commonwealth v. Gross, supra.* " 'In the absence of proof to the contrary, the presumption is in favor of the legality and regularity of the proceedings before the grand jury.' (citations omitted)." *Commonwealth v. Gross, supra,* at 91, 92 A.2d at 254. Therefore, I would affirm the order of the lower court denying the motion to quash the indictment.

Furthermore, I do not agree with the majority's conclusion that the "presence on the grand jury of *six* persons who had not seen or heard witnesses who testified throughout the early phases of the investigation must be deemed inherently prejudicial" to the appellant. As the Court, in *United States ex rel. McCann v. Thompson,* 144 F.2d 604, 607 (2d Cir.), *cert. denied,* 323 U.S. 790 (1944), stated:

"Since all the evidence adduced before a grand jury — certainly when the accused does not appear — is aimed at proving guilt, the absence of some jurors during some part of the hearings will ordinarily merely weaken the prosecution's case. If what the absentees actually hear is enough to satisfy them, there would seem to be no reason why they should not vote."

This rationale is particularly applicable in view of Assistant Attorney General Tischler's affidavit which avers that "[t]he vast preponderance of testimony and

evidence pertaining to the charges contained in the ... Presentment ... was presented through live witnesses who appeared before the Grand Jury after January 15, 1975." Assistant Attorney General Tischler also averred that he read to the Grand Jury the testimony of the appellant prior to January 15, 1975 which formed the basis of the Perjury and False Swearing charges. The testimony of witnesses appearing before March 10, 1975, and all exhibits, were made available to the Grand Jurors for their deliberations. Additionally, the Commonwealth presented an affidavit declaring that more than twelve members of the investigating grand jury as originally impaneled on January 9, 1974, voted in favor of the Presentment. These facts, largely ignored by the majority, clearly indicate that the substitution of the six jury members did not prejudice the appellant. If the presentment itself was not tainted by some prejudicial irregularity, I do not see how the indictment can be quashed on the basis of such presentment.

I would therefore affirm the order of the lower court denying the appellant's motion to quash the indictment.